**GLENN K. JACKSON INC., dba Jackson & Donahue; Glenn K. Jackson, Plaintiffs–Appellants,**

v.

**Richard ROE; Stuart, Maue, Mitchell & James, Defendants–Appellees.**

No. 00–15614.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 10, 2001

Filed Dec. 11, 2001

action arises out of an audit conducted by Stuart Maue of J & D's billing statements sent to Golden Eagle Insurance Company. J & D billed Golden Eagle for attorneys' fees incurred while representing Golden Eagle and its insureds in worker's compensation cases, as one of Golden Eagle's panel counsel. The district court had jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441; this court has jurisdiction pursuant to 28 U.S.C. § 1291. We affirm in part and reverse in part.

John D. O'Connor, Laura E. Malkofsky, Robert A. Roth, Tarkington, O'Connor & O'Neill, San Francisco, California, for appellants Glenn K. Jackson, Inc., dba Jackson & Donahue a corporation, and Glenn K. Jackson an individual.

James M. Wagstaffe, Pamela Urueta, Timothy J. Fox, Kerr & Wagstaffe LLP, San Francisco, California, and Steven H. Leyton, Stone, Leyton & Gershman, St. Louis, Missouri, for appellee Stuart, Maue, Mitchell & James, Ltd.

Before: PREGERSON, RAWLINSON, Circuit Judges, and WEINER, District Judge.[1]

WEINER, Senior District Judge:

## I.

Glenn K. Jackson, Inc., d.b.a. Jackson & Donahue, and Glenn K. Jackson individually (collectively "J & D") appeal the district court's granting of summary judgment in favor of Stuart, Maue, Mitchell & James ("Stuart Maue") in J & D's diversity action seeking relief under California law. The

## II.

Jackson & Donahue is a law corporation owned by Glenn K. Jackson. J & D is primarily involved in the defense of insureds in workers' compensation litigation. In early 1995, Golden Eagle hired J & D to represent it and its insureds in workers' compensation cases as one of its panel counsel. Before beginning work for Golden Eagle, Jackson, on behalf of his firm, acknowledged and agreed to Golden Eagle's Litigation Handling Procedures for Panel Counsel (the "Guidelines") by returning a signed copy of the Guidelines to Golden Eagle. One purpose of the Guidelines was to provide billing instructions for the firm. The Guidelines authorized Golden Eagle to conduct on-site audits of J & D, utilizing both independent legal bill auditing firms and internal teams of auditors, claims personnel and/or lawyers.

In his declaration in opposition to the motion for summary judgment, Jackson stated he "felt" that he had the right to object to the auditors selected, and withhold his approval and cooperation, if the auditors assigned to perform the audit were incompetent or biased or, for whatever reason, including lack of sufficient pay, did not intend to spend the time necessary

---

1. Honorable Charles R. Weiner, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

to adequately analyze the billing records. In addition, Jackson felt he had the right to discuss with Golden Eagle any objections he had to either the auditor or the procedures employed. The Guidelines, however, state only that the audit "would be based upon solely the work quality, reporting and time and costs disbursements."

During the period of February 24, 1995 to June 6, 1996, J & D submitted bills to Golden Eagle for legal fees in the amount of $793,957.25 and expenses in the amount of $57,472.55. J & D utilized a "fee schedule" for certain tasks, i.e., set monetary charges for specific tasks, rather than using time-based billing, on invoices to Golden Eagle. Although Jackson disputed that the Guidelines prohibited the submission of legal bills with "blocked-billed" entries, he conceded that the Guidelines provided that "block billing is unacceptable and will not be paid."

In January 1996, Golden Eagle informed J & D that it would be audited and hired Stuart Maue to do the work. Stuart Maue is engaged in the business of legal auditing. From July 8 through July 11, 1996, John Decker of Stuart Maue conducted an audit at Jackson's office. According to Jackson, Decker spent a total of about fifteen hours on-site reviewing one hundred twenty three requested files. In August 1996, Stuart Maue submitted its audit report to Golden Eagle. Decker's analysis of J & D's billing statements resulted in the classification of $266,626.75 as unverified fees and $1,425.49 as unverified expenses. Thereafter, J & D and Golden Eagle entered into a settlement on the fee dispute. Golden Eagle stopped referring cases to J & D after Stuart Maue issued the audit report.

J & D's First Amended Complaint alleges claims of breach of contract, negligence, breach of fiduciary duty, fraud and deceit, defamation, intentional interference with contract and prospective business advantage, and unfair competition and false advertising. The district court granted summary judgment in favor of the defendant on all claims. J & D appeals the grant of summary judgment on the causes of action for negligence, fraud, defamation, and unfair competition. In addition, Jackson appeals the district court's ruling that he lacked standing on the defamation claim.

### III.

■■■ A grant of summary judgment is reviewed de novo. *Weiner v. San Diego County*, 210 F.3d 1025, 1028 (9th Cir.2000); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir.2000) (en banc). The appellate court's review is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c). *Adcock v. Chrysler Corp.*, 166 F.3d 1290, 1292 (9th Cir. 1999); *Meade v. Cedarapids, Inc.*, 164 F.3d 1218, 1221 (9th Cir.1999). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *See, Lopez*, 203 F.3d at 1131; *Balint v. Carson City*, 180 F.3d 1047, 1050 (9th Cir.1999) (en banc). Our place is not to weigh the evidence or determine the truth of the matter, but only determine whether there is a genuine issue for trial. *Id.* at 1054.

### IV.

*To whom did Stuart Maue's duty of care run?*

■■■ Under California law, "[t]he threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion.... Whether this essential prerequisite to a negligence cause

of action has been satisfied in a particular case is a question of law." *Adelman v. Associated International Insurance Co.*, 90 Cal.App.4th 352, 360, 108 Cal.Rptr.2d 788, 793 (2001). In *Biakanja v. Irving*, 49 Cal.2d 647, 320 P.2d 16 (1958), the California Supreme Court undertook to create a checklist of factors to consider in assessing the existence of a legal duty of one party to another in the absence of privity of contract between them. In *Biakanja*, the defendant notary public had prepared the will of plaintiff's brother which left the entire estate to the plaintiff. Due to defendant's negligence, the will was improperly attested and could not be admitted to probate. As a result, plaintiff received only her intestate share of the estate. The court concluded that defendant owed a duty of reasonable care to plaintiff which he had clearly breached. In reaching this conclusion, the Court was careful not to declare an unlimited scope of liability in favor of any person who might have received a benefit under a contract but for its negligent performance. The Court emphasized that the "end and aim" of the transaction was to benefit the plaintiff Biakanja and the injury to her from Irving's negligence was clearly foreseeable. *Id.* at 650, 320 P.2d 16.

The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.

*Id.* This test has been used in cases applying *Biakanja* to impose a duty of care and liability in negligence for its breach, in a variety of contexts. *See, e.g., Lucas v. Hamm*, 56 Cal.2d 583, 15 Cal.Rptr. 821, 364 P.2d 685 (1961) (attorney who undertakes to draft or prepare a will owes a duty not only to the testator but also to the testator's intended beneficiary to complete the task in a manner which will achieve the testator's purpose); *Connor v. Great Western Savings & Loan Assn.*, 69 Cal.2d 850, 73 Cal.Rptr. 369, 447 P.2d 609 (1968) (applying the *Biakanja* factors to find that a construction lender owed a duty to third party home buyers to discover and prevent major defects in homes the construction of which it financed because, by virtue of its position, it exercised control over the quality of the construction); *Roberts v. Ball, Hunt, Hart, Brown & Baerwitz*, 57 Cal.App.3d 104, 128 Cal.Rptr. 901 (1976) (attorney, in giving a written opinion to a client, which the attorney knew would be transmitted to and relied upon by a third party in dealing with the client, owed a duty of care to such third party in providing advice to the client because the third party's anticipated reliance was the end and aim of the transaction); *J'Aire Corp. v. Gregory*, 24 Cal.3d 799, 157 Cal.Rptr. 407, 598 P.2d 60 (1979) (contractor liable to lessee of premises for negligent delay in construction because injury from delay was foreseeable and circumstances established a special relationship between contractor and lessee even though they were not in privity of contract). As a group, these cases establish the principle that "where the 'end and aim' of the contractual transaction between a defendant and the contracting party is the achievement or delivery of a benefit to a known third party or the protection of that party's interests, then liability will be imposed on the defendant for his or her negligent failure to carry out the obligations undertaken in the contract even though the third

party is not a party thereto." *Adelman,* 90 Cal.App.4th at 363, 108 Cal.Rptr.2d 788.

*Bily v. Arthur Young & Co.,* 3 Cal.4th 370, 11 Cal.Rptr.2d 51, 834 P.2d 745 (1992), the case relied upon by the district court, has arguably limited the application of the *Biakanja* principles. In *Bily,* the California Supreme Court emphasized that there were three policy concerns that had to be considered before a duty could be found under the *Biakanja* factors: (1) liability may in particular cases be out of proportion to fault; (2) parties should be encouraged to rely on their own ability to protect themselves through their own prudence, diligence and contracting power; and (3) the potential adverse impact on the class of defendants upon whom the duty is imposed. 3 Cal.4th at 399–405, 11 Cal. Rptr.2d 51. *Bily* involved plaintiffs who invested in a computer company that went bankrupt. The plaintiffs alleged they made their investment in reliance on the positive audit opinion of the defendant, an accounting firm. The case was before the California Supreme Court on appeal from a decision of the Court of Appeals that affirmed the trial court's judgment of professional negligence against the defendants.

In *Bily,* the court opined "[t]he threshold element of a cause of action for negligence is the existence of a duty to use due care...." *Id.* at 56, 834 P.2d 745. Applying the *Biakanja* factors, the court declined "to permit all merely foreseeable third party users of audit reports to sue the auditor on a theory of professional negligence" for the following three reasons. First, given that the "watchdog" role of an auditor is "secondary," the complexity of the professional opinions rendered in audit reports, and the difficult and potentially tenuous causal relationships between audit reports and economic losses from investment and credit decisions, the "auditor exposed to negligence claims from all foreseeable third parties

faces potential liability far out of proportion to its fault." *Id.* at 67, 834 P.2d 745. Second, "the generally more sophisticated class of plaintiffs in auditor liability cases (e.g., business lenders and investors) permits the effective use of contract rather than tort liability to control and adjust the relevant risks through 'private ordering.'" *Id.* For example, a third party "might commission its own audit or investigation, thus establishing privity between itself and an auditor or investigator to whom it could look for protection." *Id.* at 71, 834 P.2d 745. Third, the court determined that reliance upon foreseeability alone was insufficient; that auditor liability to merely foreseeable third parties would encourage "dislocations of resources, including increased expense and decreased availability of auditing services in some sectors of the economy...." *Id.* at 67, 834 P.2d 745.

Another case the district court found controlling was decided sixteen years before *Bily,* but anticipated its holding. In *Goodman v. Kennedy,* 18 Cal.3d 335, 134 Cal.Rptr. 375, 556 P.2d 737 (1976), the Court reviewed the *Biakanja* factors before holding an attorney's duty lies solely with the client and does not extend to any other third party. *Goodman* involved plaintiffs who purchased stock in a company and later claimed that the defendants failed to disclose facts that affected the value of the stock. The defendant was the attorney for the corporation issuing the stock. After reviewing the factors in *Biakanja,* the court held the defendants did not have a duty of care to the plaintiffs, who dealt with the attorney's client in an arm's length transaction, because to impose liability in such circumstances "would inject undesirable self-protective reservations into the attorney's counseling role. The attorney's preoccupation or concern with the possibility of claims based on mere negligence (as distinct from fraud or malice) by any with whom his client might

deal 'would prevent him from devoting his entire energies to his client's interests.'" *Id.* at 344, 134 Cal.Rptr. 375, 556 P.2d 737.

The California and federal courts have applied the *Bily* rationale to other suppliers and evaluators of information. For example, in 1998 the California Supreme Court reviewed the *Biakanja* factors and applied *Bily* to title insurers in *Quelimane Co., Inc. v. Stewart Title Guaranty Co.,* 19 Cal.4th 26, 77 Cal.Rptr.2d 709, 960 P.2d 513 (1998). The California Supreme Court reiterated its rationale for *Bily* when it stated:

> [i]n the business arena it would be unprecedented to impose a duty on one actor to operate its business in a manner that would ensure the financial success of transactions between third parties. With rare exceptions, a business entity has no duty to prevent financial loss to others with whom it deals directly. A fortiori, it has no greater duty to prevent financial losses to third parties who may be affected by its operations.

*Id.* at 59, 834 P.2d 745; *see also Cabanas v. Gloodt Assoc.,* 942 F.Supp. 1295, 1308 (E.D.Cal.1996) (reviewing the *Biakanja* factors and applying *Bily* to find that an appraiser hired by plaintiff's lender owed no duty to plaintiff); *Sanchez v. Lindsey Morden Claims Services, Inc.,* 72 Cal. App.4th 249, 84 Cal.Rptr.2d 799 (1999) (reviewing the *Biakanja* factors and applying *Bily* to find that an insurer-retained claims adjuster owes no duty to insureds); *Soderberg v. McKinney,* 44 Cal.App.4th 1760, 52 Cal.Rptr.2d 635 (1996) (applying *Bily* to real estate appraisers because the court could see no reason why *Bily* should be limited to accountants or auditors).

While J & D argues that *Bily* only applies to financial audits, rather than attorney billing audits, the California Supreme Court did not make the distinction J & D urges. Rather, the cases discussed indicated that the limitations *Bily* placed on the *Biakanja* factors apply widely to those who supply or evaluate information to limit their liability to even foreseeable third parties who have an interest in their work product. Thus we hold the district court did not err when it concluded that *Bily* dictated its negligence analysis, resulting in a finding that Stuart Maue owed J & D no duty of care.

*Is J & D a third party beneficiary of the contract between Golden Eagle and Stuart Maue?*

█ J & D contends that, even if *Bily* applies, the district court erred in finding that J & D did not fit within the exceptions to the *Bily* rule. The district court held J & D does not fit into the third party beneficiary exception because the audit engagement contract between Stuart Maue and Golden Eagle does not identify it as a third party beneficiary. Further, the district court held that J & D cannot recover on the negligent misrepresentation exception because it did not present any credible evidence of reasonable reliance.

█ The district court was correct that, under *Bily,* J & D is not a third party beneficiary of the audit engagement contract between Stuart Maue and Golden Eagle. *Bily* expressly held "that an auditor's liability for general negligence in the conduct of an audit ... is confined to the client, i.e., the person who contracts for or engages the audit services." 3 Cal.4th at 406, 11 Cal.Rptr.2d at 73, 834 P.2d 745. The court, however, opined in a footnote that "clients" may include third party beneficiaries:

> It is possible the audit engagement contract might expressly identify a particular third party or parties so as to make them express third party beneficiaries of the contract. Third party beneficiaries may under appropriate circumstances possess the rights of parties to the contract. . . . This case presents no third

party beneficiary issue. [The auditor] was engaged by the [client] to provide audit reporting to the [client]. No third party is identified in the engagement contract. Therefore, we have no occasion to decide whether and under what circumstances express third party beneficiaries of audit engagement contracts may recover as "clients" under our holding.

*Id.*, 3 Cal.4th at 406 n. 16, 11 Cal.Rptr.2d at 74, n. 16, 834 P.2d 745 (internal citations omitted). In addition, "as a matter both of policy and or reality there are no 'express third party beneficiaries' of an ordinary, white-bread audit engagement contract. There are only incidental beneficiaries who have no legal rights arising from the contract." *Mariani v. Price Waterhouse*, 70 Cal.App.4th 685, 701, 82 Cal.Rptr.2d 671, 681 (1999). Here, there is no allegation that J & D is identified or impliedly recognized as a third party beneficiary to the audit engagement contract. Golden Eagle retained Stuart Maue to determine if J & D's billings were in accordance with Golden Eagle's Guidelines. If anything, the relationship between Stuart Maue and J & D could best be described as investigatory if not antagonistic. In short, there is nothing to suggest that J & D was anything other than an incidental beneficiary of the work Stuart Maue performed for Golden Eagle.

The court in *Bily* also noted there is another class of people "who, although are not clients," may recover on a theory of negligent misrepresentation,[2] rather than negligence because they may reasonably come to receive and rely upon an audit report, and whose existence constitutes a risk of audit reporting that may fairly be imposed upon the auditor. The *Bily* court found that such persons are "specifically intended beneficiaries of the audit report who are known to the auditor and for whose benefit it renders the audit report." *Bily*, 3 Cal.4th at 406–7, 11 Cal. Rptr.2d at 73, 834 P.2d 745. J & D argues that it may fall within this exception. To survive a motion for summary judgment, however, J & D must have established a genuine issue of fact that Stuart Maue intended to induce reliance on the audit report and that J & D did in fact justifiably rely on the report to its detriment.[3] Here, Stuart Maue was hired by only Golden Eagle to perform the audit for Golden Eagle's purposes under Golden Eagle's direction. This factor alone suggests

**2.** The elements of negligent misrepresentation include: (1) misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the misrepresentation, (4) ignorance of the truth and justifiable reliance on the misrepresentation by the party to whom it was directed, and (5) resulting damage. *Lincoln Alameda Creek v. Cooper Industries Inc.*, 829 F.Supp. 325, 330 (N.D.Cal.1992) (citing *Fox v. Pollack*, 181 Cal.App.3d 954, 226 Cal.Rptr. 532 (Ct.App. 1986)).

**3.** *Bily* creates an objective standard that looks to the specific circumstances to ascertain whether a supplier of information has undertaken to inform and guide a third party with respect to an identified transaction or type of transaction. If such a specific undertaking has been made, liability is imposed on the supplier. If, on the other hand, the supplier "merely knows of the ever-present possibility of repetition to anyone, and possibility of action in reliance upon [the information] on the part of anyone to whom it may be repeated," the supplier bears no legal responsibility. *Bily* at 410, 11 Cal.Rptr.2d 51, 834 P.2d 745 *citing* Rest.2d Torts § 552, com. (h). Liability is limited to those "whom the engagement is designed to benefit in order to allow the supplier of information to ascertain the potential scope of its liability and make rational decisions regarding the undertaking. Therefore, in order to recover under a theory of negligent misrepresentation, the plaintiff must be an intended beneficiary of the contract. Her reliance on the report is otherwise not justified." *Lincoln Alameda Creek*, 829 F.Supp. at 330.

the audit engagement was designed to benefit only Golden Eagle and not J & D. If the audit found no irregularities J & D would gain nothing. In addition, as we discuss next, the district court did not err in concluding J & D did not present evidence of reasonable reliance. Therefore, it cannot recover on a negligent misrepresentation exception under *Bily*.

*J & D's fraud claim*

■ "A cause of action for fraud requires the plaintiff to prove (a) a knowingly false misrepresentation by the defendant, (b) made with the intent to deceive or to induce reliance by the plaintiff, (c) justifiable reliance by the plaintiff, and (d) resulting damages." *Wilkins v. Nat'l Broadcasting Co., Inc.*, 71 Cal.App.4th 1066, 84 Cal.Rptr.2d 329, 338 (1999). J & D argues that summary judgment was improperly granted because the district court found that it could not prove the justifiable reliance element of fraud. It argues that, while Golden Eagle had broad latitude in selecting the auditor, that latitude was not so broad as to entirely discount J & D's expectations that the auditor's representations regarding its qualifications to conduct the audit were not fraudulently misrepresented.

■ The basis for the district court's decision is that J & D could not have justifiably relied on any misrepresentation of Stuart Maue regarding its auditing credentials because Golden Eagle had complete and unchecked discretion to select the auditor. The record reflects no genuine issue of fact that would contradict this conclusion. The contract between Golden Eagle and J & D expressly states "that Golden Eagle may periodically conduct on site audits of panel counsel utilizing both independent legal bill auditing firms and internal teams of auditors, claims personnel and or lawyers." It gives the panel counsel no right to object to the audit,

object to the auditor, or dictate the procedures to be used by the auditor. The only evidence J & D offered to the contrary was Glen Jackson's unsupported and self-serving declarations that he "felt" he had the right to reject the auditor if the auditor was incompetent or biased, and that he had the right to discuss any objections he had with Golden Eagle. Given that J & D clearly did not have the discretion to select or reject the auditor under the contract, Jackson's "feelings" were not sufficient to create a genuine issue of fact regarding justifiable reliance.

J & D also argues, citing *Locke v. Warner Bros., Inc.*, 57 Cal.App.4th 354, 66 Cal.Rptr.2d 921 (1997), that Golden Eagle's discretionary power under the contract to select the auditor and thereby affect J & D's rights, could not be exercised in a manner "which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." While *Locke* does stand for the proposition that, where one contracting party has discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith, 57 Cal.App.4th at 363, 66 Cal.Rptr.2d at 926, its holding is inapposite to J & D's fraud claim. Although *Locke* might apply vis-a-vis a claim against Golden Eagle for breach of contract, J & D fails to demonstrate how Golden Eagle's discretion in choosing the auditor satisfied the reliance element of a fraudulent misrepresentation cause of action against Stuart Maue.

*Libel and slander: Should J & D have been allowed to show actual malice through reckless disregard for the truth?*

■ The district court found Stuart Maue's communications to Golden Eagle were privileged under Cal. Civ.Code § 47(c). J & D first argues the district court erred in granting summary judgment on its defamation claim, based on a

lack of evidence of actual malice, because the malice/privilege issues were not raised until the reply brief. It also argues that the record demonstrated malice by reckless disregard, thereby extinguishing any privilege Stuart Maue may have had when making the allegedly libelous report.[4]

■■■■ J & D's first argument has little merit. The district court had discretion to consider the § 47(c) issue even if it was raised in a reply brief. In fact, a district court "may grant summary judgment on any legal ground the record supports." 6 James W. Moore, Walter J. Taggart and Jeremy C. Wicker, Moore's Federal Practice ¶ 56.14[1] (1994). Thus, the district court properly considered the § 47(c) issue.

■■■■ The second argument is better founded. In granting summary judgment, the district court only applied the definition of actual malice under § 47(c) as interpreted by the California Supreme Court in *Agarwal v. Johnson*, 25 Cal.3d 932, 160 Cal.Rptr. 141, 603 P.2d 58 (1979). J & D argues that California law recognizes that actual malice alternatively may be shown by a defendant's reckless disregard for the truth. We agree.

■■■■ Under § 47(c), a published statement that is false and defamatory may still be privileged. "A privileged publication or broadcast is one made: ... [i]n a communication, without malice, to a person interested therein, ... by one who is also interested." Cal. Civ.Code § 47(c)(1) (2001). In *Agarwal*, the Court stated that "[t]he malice referred to by the statute is actual malice or malice in fact, that is, a state of mind arising from hatred or ill will, evidencing a willingness to vex, annoy or injure another person." *Agarwal*, 25 Cal.3d at 944, 160 Cal.Rptr. at 148, 603 P.2d 58. However, the California Supreme Court has also permitted an alternative method of showing malice, holding that malice may be established by showing that defendants lacked reasonable grounds to believe the statement true and therefore acted with reckless disregard for plaintiff's rights. *Sanborn v. Chronicle Pub. Co.*, 18 Cal.3d 406, 413, 134 Cal.Rptr. 402, 556 P.2d 764 (1976), *see also Cabanas v. Gloodt Assocs.*, 942 F.Supp. 1295, 1301 n. 7 (E.D.Cal.1996) (quoting *Cuenca v. Safeway San Francisco Employees*, 180 Cal.App.3d 985, 225 Cal.Rptr. 852 (1986)). In demonstrating reckless disregard, it is not sufficient that the statements are shown to be inaccurate, or even unreasonable. "Only willful falsity or recklessness will suffice." *Cabanas*, 942 F.Supp. at 1301.

The district court did not specifically address the reckless disregard issue. J & D arguably created a triable issue on reckless disregard via Jackson's declaration attached to the response to the summary judgment motion. Among other things, Jackson declares that the auditor falsely stated the procedures he used in conduct-

---

4. Jackson, the individual plaintiff, argues that the district court also erred in concluding he lacked standing on the defamation claim. He raised this issue for the first time in a footnote at the end of his opening brief and did not provide any additional legal authority for the assertion. In fact, the district court found that he lacked standing on all counts. The basis for the finding was that Jackson was merely a shareholder in the allegedly injured corporation, and thus any injury he suffered was incidental. *See Jones v. H.F. Ahmanson & Co.*, 1 Cal.3d 93, 81 Cal.Rptr. 592, 460 P.2d 464 (1969). The *Jones* court "noted the well-established general rule that a stockholder of a corporation has no personal or individual right of action against third persons ... for a wrong or injury to the corporation which results in the destruction or depreciation of the value of his stock, since the wrong thus suffered by the stockholder is merely incidental to the wrong suffered by the corporation and affects all stockholders alike." *Id.* (internal quotations and citations omitted). We find no error in the district court's conclusion that Jackson, the individual, lacked standing.

ing the audit, including statements that the auditor examined case files and interviewed relevant J & D personnel, and overstated the amount of work he did to compile the report. He also declares that the auditor recklessly disregarded the truth when the auditor identified as "vague" certain billings for conferences, implying that they never took place. Based on this evidence, the entry of summary judgment was improper. If true, the auditor's misrepresentations of his work were a causal factor in his factual conclusion that J & D billed for conferences that never took place. J & D was entitled to present this evidence to a jury since it came forward with evidence of willful falsity in the audit report, thereby creating a genuine issue of fact in dispute.

*Unfair business practices*

Finally, J & D argues the district court erred in granting summary judgment on the unfair business practices claim brought pursuant to California Business and Professions Code § 17200. Specifically, J & D takes issue with the fact that the district court granted judgment based upon an issue not raised in the parties' briefs, to wit, that J & D failed to plead with specificity the conduct that it alleged violated § 17200. Contrary to J & D's assertion, the district court entered judgment on two alternative grounds, finding both that there was a failure to plead with specificity the conduct that violated § 17200, and that there was no conduct alleged that fell within the statute. This was the very argument raised by Stuart Maue in its moving papers. As the district court specifically agreed with this argument, J & D's assertion that it had no notice that this would be a decisive issue is meritless.

On the substance of the claim, the district court was clearly correct in its finding that J & D failed to allege conduct that fell within the prohibition of the statute. In *Cel–Tech Communications, Inc. v.*

*Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999), the court held that § 17200 "does not proscribe specific practices. Rather, as relevant here, it defines 'unfair competition' to include 'any unlawful, unfair or fraudulent business act or practice.' ... Its coverage is 'sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law.'" *Id.* at 180, 83 Cal.Rptr.2d 548, 973 P.2d 527. The tort encompasses practices which offend established public policy or that are immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. *Podolsky v. First Healthcare Corp.*, 50 Cal. App.4th 632, 58 Cal.Rptr.2d 89 (1996). The *Cel–Tech* Court warned, however, that the breadth of § 17200 does not give a plaintiff license to "plead around" the absolute bars to relief contained in other possible causes of action by recasting those causes of action as ones for unfair competition. *Cel–Tech* at 182, 83 Cal.Rptr.2d 548, 973 P.2d 527.

Here, J & D seems to be doing just that. All its other claims against Stuart Maue, with the exception of the defamation claim, cannot proceed because of substantial pleading or evidentiary problems. The district court was correct to hold that the same conduct should not be permitted to be recast as an unfair competition claim because Stuart Maue's conduct of the audit, while possibly not proper, does not rise to the level of immoral, unethical, oppressive, unscrupulous or substantially injurious conduct.

In conclusion, the decision of the district court entering summary judgment in favor of Stuart Maue on all counts will be affirmed with the sole exception of the defamation claim of the law firm plaintiff.

AFFIRMED IN PART, REVERSED IN PART, REMANDED.