Warner MACEY, Plaintiff,

v.

**ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, Gary Korbas, and Adam Korbas, Defendants.**

### No. C 02–2594 WDB.

United States District Court, N.D. California.

Sept. 11, 2002.

Harvey T. Elam, Elam & Robbins, San Francisco, CA, for Plaintiff.

Peter H. Klee, Marc J. Feldman, Luce, Forward, Hamilton & Scripps LLP, San Diego, CA, for Defendants.

## ORDER GRANTING MOTION TO REMAND

BRAZIL, United States Magistrate Judge.

### *INTRODUCTION*

On April 29, 2002, plaintiff filed his complaint in state court. In it he asserts claims against his insurance provider, All-state, and his insurance agents, Gary and Adam Korbas. Plaintiff and the Korbases are California citizens. Allstate is an Illinois citizen. On May 30, 2002, defendants removed this action to federal court—alleging jurisdiction on the basis of diversity. According to defendants, the Korbases' citizenship does not destroy diversity because they are "sham" defendants—that is, they are "fraudulently joined." *McCabe v. Gen. Foods Corp.,* 811 F.2d 1336, 1339 (9th Cir. 1987).

On June 28, 2002, plaintiff filed a Motion to Remand ("Motion"), arguing that he did not "fraudulently" join the Korbases, and therefore, that defendants cannot demonstrate diversity.

On Wednesday, August 28, 2002, the court heard oral argument in connection with plaintiff's Motion. The court RULES as follows.

### *APPLICABLE STANDARDS*

■ Defendants must bear the burden of proving all facts necessary to support jurisdiction. *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1992). In order to prove "fraudulent joinder," defendants must prove that plaintiff "fails to state a cause of action against [the] resident defendant, and the failure is *obvious* according to the *settled* rules of the state." *Ritchey v. Upjohn Drug Co.,* 139 F.3d 1313 (9th Cir.1998) *citing McCabe v. Gen. Foods Corp.,* 811 F.2d 1336 (9th Cir.1987) (emphasis added). If there is a non-fanciful possibility that plaintiff can state a claim under California law against the non-diverse defendants the court must remand.

■ Because the court must resolve all doubts against removal, we employ a presumption against fraudulent joinder. *Gaus,* 980 F.2d at 566. Accordingly, the court must resolve all material ambiguities in state law in plaintiff's favor. *Good v.*

*Prudential,* 5 F.Supp.2d 804, 807 (N.D.Cal. 1998); *see also,* Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial, at ¶ 2:685 (TRG2002). When there are real ambiguities among the relevant state law authorities, federal courts that are considering motions to remand should avoid purporting to decide how state courts would construe those authorities. *E.g., Briano v. Conseco Life Ins. Co.,* 126 F.Supp.2d 1293, 1297 (C.D.Cal.2000).

## THE PERTINENT ALLEGATIONS IN PLAINTIFF'S COMPLAINT

In his complaint, plaintiff asserts various claims against Allstate and the Korbases. We summarize these allegations in the paragraphs that follow.

Plaintiff alleges that the Korbases were "Allstate agents." *E.g.,* Notice of Removal, filed May 30, 2002, at Ex. A (First Amended Complaint) (hereafter "Complaint") at 6. Plaintiff also alleges that "[i]n the alternative, and to the extent allowed by California law, ... [the Korbases are] also personally liable for [their] conduct and representations as alleged herein." Complaint at ¶¶ 3 and 4. According to plaintiff, Allstate and its agents invited plaintiff to direct his insurance-related questions to the Korbases, and plaintiff reasonably relied on the information the Korbases provided to him. *E.g.,* Complaint at ¶ 9.

In July 1999, plaintiff purchased automobile insurance from Allstate through the Korbases. Plaintiff purchased both liability and collision coverage. Complaint at ¶ 7. Plaintiff alleges that Allstate was aware that plaintiff's automobiles were financed. He further contends that Allstate and the Korbases also owed duties directly to the lienholders. It follows, according to plaintiff, that defendants owed plaintiff both a "direct" duty and a duty "as an intended and expected beneficiary of the [duty] they owed the lienholders." Complaint at ¶ 11.

While plaintiff's automobiles were insured by Allstate, plaintiff would sell and purchase cars. When plaintiff sold or purchased cars he would then need to delete or add the cars from the Allstate policy as necessary. Plaintiff often orally notified Allstate of these changes by calling the Korbases. On each occasion, Allstate, through its agents, "assured" plaintiff that newly acquired cars were automatically covered by his policy even without notice to Allstate. Complaint at ¶ 20. In addition, plaintiff alleges, the written policy states that "replacement" vehicles are automatically insured for both liability and collision. Complaint at ¶¶ 22 and 23.

Plaintiff routinely paid his insurance premiums monthly via the internet. Complaint at ¶ 17. Occasionally, Allstate would not receive the electronic payment. On such occasions, Allstate notified plaintiff by mail. Plaintiff then made an additional payment to satisfy the amount past due.

In July 2000, plaintiff paid his monthly premium via the internet as he had done before. His July payment was due July 29, 2000. Unknown to plaintiff, Allstate did not receive that payment. Complaint at ¶ 25. Nonetheless, plaintiff contends, "for at least several weeks after July 29, 2000, [the Korbases] assured plaintiff that his insurance was in effect and continuously protecting him." Complaint at ¶ 27; *see also,* Complaint at ¶ 25. The Korbases made these assurances both orally and in writing. *Id.*

On July 30, 2000, plaintiff purchased a 1997 Saab automobile to replace an insured car. Complaint at ¶ 30. Plaintiff notified Allstate, through the Korbases, of his purchase. Complaint at ¶ 33. The Korbases assured plaintiff that the 1997 Saab was insured immediately upon purchase. Among other things, Adam Korbas

also told plaintiff for the first time that Allstate had not received his payment due July 29, 2000. Complaint at ¶ 36. Adam Korbas did *not* tell plaintiff that Allstate would not provide coverage or that his policy was cancelled. In fact, Adam Korbas assured plaintiff both orally and in writing that the 1997 Saab was insured as of July 29, 2000. Complaint at ¶¶ 36–39. Additionally, Allstate sent plaintiff a revised statement of "Policy Declarations" which also stated that the 1997 Saab was insured as of July 29, 2000. Complaint at ¶¶ 40–42.

Plaintiff re-transmitted the July 2000 payment. Complaint at ¶ 45. In reliance on Allstate's and the Korbases' representations and assurances plaintiff believed the 1997 Saab was insured and drove the car. On August 10, 2000, while driving the 1997 Saab, plaintiff was in a car accident. Complaint at ¶ 46.

Following the accident, plaintiff notified Allstate, through the Korbases, about the accident and the apparent losses he had incurred. At no time did the Korbases tell plaintiff that Allstate would assert that the policy had been cancelled before the accident. For some time, Allstate's agents continued to reassure plaintiff that his Allstate policy covered the losses he had incurred as a result of the accident. Relying on these representations and omissions, plaintiff choose to incur certain additional costs related to towing and storage of the "totaled" 1997 Saab that he would not have incurred had he known Allstate would deny coverage.

Allstate continued to delay paying on the claim until the carrier finally notified plaintiff of its position that the policy had lapsed and his losses, therefore, were not covered. Complaint at ¶¶ 49–56.

Based on these and related allegations, plaintiff asserts claims against Allstate alone for breach of written and oral contract, breach of written and oral insurance binder, estoppel, breach of rights as third party beneficiary, insurance bad faith, declaratory judgment, and reformation. Complaint at ¶¶ 65–97 and 112–115. Plaintiff alleges claims against both Allstate and the Korbases for negligent misrepresentation, negligence and "detrimental reliance." Complaint at ¶¶ 98–111.

Most relevant to this opinion are the following allegations as described above. Prior to his car accident, defendant *specifically requested* coverage for his 1997 Saab. In response to his *specific inquiry* and with full knowledge that his July payment was past due, the Korbases assured plaintiff that the 1997 Saab was insured. Complaint at ¶ 36–39.

### DISCUSSION

Our task is to determine whether it is "obvious" under "well settled" California law that under the allegations in his complaint plaintiff would be unable to state a claim against the individual defendants.

Defendants rely on the general rule that "[liability] to the ... insured for acts or contracts of an insurance agent within the scope of his agency, with a full disclosure of the principal, rests on the company." Opposition to Motion to Remand, filed August 7, 2002, ("Opposition") at 4:19–22 *citing Lippert v. Bailey*, 241 Cal.App.2d 376, 382, 50 Cal.Rptr. 478 (1966). Defendants contend that the Korbases acted only as agents for Allstate and that this agency was fully disclosed. It follows, defendants argue, that only Allstate could be responsible under California law for the Korbases' acts and that plaintiff can state no claim against the agents.

Plaintiff, on the other hand, contends that there is authority in California law under which the Korbases could be held personally liable for the conduct alleged in the complaint. More specifically, plaintiff argues that the Korbases "may be consid-

ered 'dual agents'" under California law and, as such, could be held personally liable for the acts alleged in the Complaint. Motion at 3:5. In support of this position, plaintiff relies primarily on *Briano v. Conseco Life Ins. Co.,* 126 F.Supp.2d 1293 (C.D.Cal.2000), which concluded that it was unclear whether California courts would recognize a duty in a non-commercial insurance broker to warn his insured that the policy he secured for the insured would lapse. The *Briano* opinion offers little help to plaintiff's cause, however, because that court assumed, for purposes of its decision, that the non-diverse defendant was a broker, not just the carrier's agent, and that as a broker that defendant clearly could have some extra-contractual duties under California law to the insured. So the primary target of the *Briano* court's inquiry was not on who could be sued (agent and carrier, or carrier only), but on the substantive scope of the broker's duty to his client, the insured.

 We doubt, but do not decide, whether the allegations in plaintiff's complaint could support a claim against the Korbases based on a "dual agency" theory. We need not resolve that issue because we hold that it is *not* obvious under well settled doctrine that plaintiff's allegations could not support a claim against the individual defendants on an alternative legal theory under California law. As we explain below, it is at least arguable that there are *two* separate (if not always completely unrelated) 'lines of exception' to the general *Lippert* rule—one sounding in notions of dual agency, and another, applicable under the allegations in plaintiff's complaint, sounding in notions of "special duty."

Defendants' opposition to the motion to remand is undermined by the fact that the authorities on which defendants primarily rely seem to acknowledge only the "dual agency" exception to the *Lippert* rule.

See especially, *Good v. Prudential Ins. Co.,* 5 F.Supp.2d 804 (N.D.Cal.1998). None of the cases cited by defendants acknowledge or purport to come to terms with what appears to be a separate strand of authority—opinions from California courts, and from federal courts sitting in California trying to understand and apply California law, that may well establish a second kind of exception to *Lippert* —what we (and other courts) call the "special duty" exception. Before describing the authority for that second kind of exception, however, we pause to point to considerations that undermine the contention that *Lippert* is likely to be given the broad and rigid application for which defendants contend.

*Lippert,* decided almost forty years ago, seemed to base its determination that a carrier's agent had no duty to an insured on concepts developed in the law of res judicata—not on the kind of analytical framework that California courts generally use to determine whether a particular category of defendants has a duty sounding in tort law to a particular category of plaintiffs. *See, Cedars–Sinai Med. Ctr., v. Superior Court,* 18 Cal.4th 1, 8, 74 Cal. Rptr.2d 248, 954 P.2d 511 (1998) (court weighs relevant policy considerations to determine whether or not to impose a tort duty); *Summit Financial Holdings, Ltd., v. Continental Lawyers Title Co.,* 27 Cal.4th 705, 715–716, 117 Cal.Rptr.2d 541, 41 P.3d 548 (2002) (whether to impose a duty is a matter of policy involving balancing of various factors). As we will explain, there is evidence in the authorities that modern California courts would use a different kind of reasoning to determine whether a tort claim could be stated against agents individually—and that if there has been a trend in the cases, it has been to expand the circumstances in which personal liability could be imposed on carrier's agents—even when those agents

could not be considered "dual" and were not acting outside the scope of their agency. *E.g., Westrick v. State Farm Ins.,* 137 Cal.App.3d 685, 187 Cal.Rptr. 214 (2d Dist. 1982); *Paper Savers, Inc., v. Nacsa,* 51 Cal.App.4th 1090, 59 Cal.Rptr.2d 547 (2d Dist.1996); *Fitzpatrick v. Hayes,* 57 Cal. App.4th 916, 67 Cal.Rptr.2d 445 (1st Dist. 1997) (declining to find a duty in that case but surveying cases that describe the court's thinking about the duty issue); and *Butcher v. Truck Ins. Exch.,* 77 Cal. App.4th 1442, 92 Cal.Rptr.2d 521 (2d Dist. 2000).

In *Lippert,* the appellate court accepted the trial judge's finding that there was no dual agency. Proceeding on the assumption that the carrier's agents had failed to procure the "specified amounts of insurance protection from the company which had been bargained for," the *Lippert* court declared that "[t]hese factors would indicate a primary right of the plaintiffs in the insurance contract and a breach of duty pertaining to that right in failing to provide the bargained for coverage. The failure to so provide constitutes an invasion of that right giving rise to a cause of action. The sole issue remaining ... is which, if any, of the defendants to the original action are liable to the plaintiffs on this cause of action." 241 Cal.App.2d at 381–382, 50 Cal.Rptr. 478. Against the backdrop of the plaintiffs already having entered a settlement contract with the carrier, and already having dismissed their action against it, the *Lippert* court explained that "[a] single cause of action may not be maintained against various defendants in separate suits as the plaintiff has suffered but one injury. Regardless of the number of legal theories which the

complaint states [the complaint had included causes of action sounding in contract, equity, and tort], if there is but one injury to a primary right, only one cause of action arises. The injury complained of by the plaintiffs is the failure to adequately insure the plaintiffs' property. Consequently, only a single cause of action may be stated." 241 Cal.App.2d at 382, 50 Cal. Rptr. 478.

After setting this analytical stage by drawing on concepts from the law of res judicata, the *Lippert* opinion shifted focus to concepts with roots primarily in the law of contracts and agency. Without explaining why concepts from res judicata and agency law should control how the courts decide whether to recognize a duty under tort law, and without exploring the kinds of public policy issues and cost-benefit analyses commonly used in California to fix the boundaries of tort duties,[1] the *Lippert* justices seemed to assume that it was obvious, without linear analytical justification, that as long as there was no dual agency and the principal was fully disclosed, there could be no tort liability in a carrier's agent for acts committed (or omitted) within the scope of the agency. 241 Cal.App.2d at 382–383, 50 Cal.Rptr. 478. As the court rather summarily announced at the critical juncture, if the principal was fully disclosed, then "[w]here the signature as agent and not as principal appears on the face of the contract, the principal is liable and not the agent." 241 Cal.App.2d at 382, 50 Cal.Rptr. 478.

The purpose of these observations about *Lippert* is not to argue that it was wrongly decided, but to identify some of the reasons why we should be hesitant to consider

---

1. *Cedars–Sinai,* 18 Cal.4th at 8, 74 Cal. Rptr.2d 248, 954 P.2d 511, *supra; Summit,* 27 Cal.4th at 715, 117 Cal.Rptr.2d 541, 41 P.3d 548, *supra. See also, Farmers Ins. Exchange v. Superior Court,* 79 Cal.App.4th 1400, 95 Cal.Rptr.2d 51 (4th Dist.2000); *Glenn K. Jackson Inc., v. Roe* 273 F.3d 1192 (9th Cir.2001) (court determines whether duty exists under California law).

that opinion to be a sufficient basis for concluding that it is well-settled under current California law that a plaintiff could not state a claim against a carrier's agent under the factual circumstances alleged in the complaint in this case. This hesitation is greatly intensified when we examine important doctrinal developments after *Lippert* was decided—developments not acknowledged in the cases on which defendants here rely.

As we will explain more fully below, there are post-*Lippert* California cases that have endorsed the idea that courts should draw on general principles of tort law to inform their thinking about whether to recognize a personal duty running from an agent to an insured—thus undercutting, at least indirectly, the notion that may be implicit in *Lippert* that there is something unique about the insurance context that justifies insulating a carrier's agents from tort liability rules that would apply to agents for other kinds of principals. For example, in *Butcher*, 77 Cal.App.4th at 1464–65, 92 Cal.Rptr.2d 521, *supra*, the court of appeals declared that:

> [a] principle that underlies the "failure to deliver the agreed-upon coverage" cases is that a disparity in knowledge may impose an affirmative duty of disclosure on the insurer *or its agent*. (See *Westrick v. State Farm Insurance*, 137 Cal.App.3d at p. 689, 187 Cal.Rptr. 214, and authorities cited.) This principle applies not just to insurance, but to all business transactions and it is recognized in section 551 of the Restatement

Second of Torts, which provides: "One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.[¶] (2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated, [¶] ... [¶] (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts." This Restatement rule is applicable to insurers.

77 Cal.App.4th at 1464, 92 Cal.Rptr.2d at 537 (citing three California cases, including *Westrick, supra* ).

We turn now, as promised, to examine directly a strand of California authority that appears to recognize a second set of bases for carving out exceptions to the *Lippert* rule (*i.e.*, a basis other than dual agency): the "special duty" cases.[2]

This second strand of authority appears to be traceable to an important opinion that defendants' papers do not mention: *Westrick v. State Farm Ins.*, 137 Cal.

---

**2.** While one way to try to rationalize this second line of cases might be to suggest that they merely represent circumstances in which a carrier's agent has exceeded the scope of his agency, and thus are not fairly understood as carving out a separate exception to *Lippert*, any such suggestion is deeply undercut by the fact that no court has mentioned this notion and no court has even intimated that the real basis for exposing the agent to liability is the notion that she exceeded the scope of her agency. *E.g., Westrick, supra; Paper Savers, supra; and Butcher, supra.* At least in some of the cases, it would not even appear arguable that the agent exceeded his authority. *E.g., Butcher, supra.* Moreover, a holding that the agent was acting outside the scope of his authority might be used by a carrier to try to escape exposure—a result that would raise additional public policy concerns.

App.3d 685, 187 Cal.Rptr. 214 (2d Dist. 1982). This omission is troubling for at least four reasons. The first is that there is an uncanny parallel between the material facts in *Westrick* and the material facts as alleged in the complaint in the case at bar. Second, the holding in *Westrick* contradicts the position taken in defendants' Opposition papers—the position that, absent a showing sufficient to establish a dual agency, a carrier's agent cannot be held personally liable for acts within the scope of his agency as long as he fully discloses his principal. Third, *Westrick* has been cited with apparent approval in many decisions by California courts and has been discussed at length in several—but has never been overruled or even criticized. Fourth, as we show in subsequent paragraphs, relatively recent authorities have identified *Westrick* as setting forth one of several acknowledged bases for exceptions to the *Lippert* rule—even when no dual agency is claimed.[3]

The pertinent facts as assumed by the *Westrick* court for purposes of making its decision can be set forth quickly. The individual defendant was a State Farm agent. His son, also a State Farm agent and working out of the same office,[4] had been servicing the plaintiff for about two years when the events giving rise to the litigation occurred. During that period, the plaintiff had had two passenger cars, both of which were insured under State Farm policies. In May of 1977 Mr. Westrick was considering buying a military-type jeep pickup truck for use in his real estate business. In that context, he claimed that he called the State Farm agent, described the vehicle and asked whether, if he bought it, it would be covered by his existing insurance policy during the drive home from the seller's location. Mr. Westrick alleged that the State Farm agent told him that the truck would be covered automatically for 30 days. As it turned out, however, Mr. Westrick decided not to buy the jeep.

About two months later he decided to purchase two vehicles for use by his son in a welding business. One was a four wheel pickup truck, the other was a six wheel welding truck. According to his allegations, Mr. Westrick promptly called the State Farm agent to secure insurance for the vehicles. He described them to the agent and said he wanted insurance coverage for them. When he offered additional information, the serial numbers and license plates, the agent said that that information would not be necessary and advised that his son would contact Mr. Westrick the next day. The agent did not suggest any reason for Mr. Westrick to be concerned that the vehicles might not be covered, and did not indicate that Mr. Westrick should not consider them covered at least until the other agent had had a chance to review the circumstances. So, according to Mr. Westrick, he assumed that what he had been told two months earlier by the agency, that a newly purchased vehicle would be covered for 30 days, would apply to the two trucks he had just purchased. Accordingly, he told his son later that same day that he could drive the welding truck the next day on the job. The next day, before Mr. Westrick had heard anything

3. Given these circumstances, the failure even to acknowledge *Westrick* comes perilously close to violating defense counsel's duty of candor to the court—especially because defense counsel's responses to the court's questions during oral argument clearly demonstrated that he was familiar with the facts and holding in that case.

4. Mr. Westrick alleged that he had pertinent interactions with both of the agents, the father and the son. The Court treated each man as the agent of the other for purposes of deciding whether liability could be established in the father.

more from the State Farm agent, his son drove the truck and was in an accident. State Farm subsequently denied coverage on the ground that the automatic extension of coverage for 30 days applied only to four wheel vehicles.

The *only issue* the *Westrick* court addressed was whether, on the facts as described above, the insured could state a claim under California law against the State Farm agent individually. Among other things, Mr. Westrick's complaint included a cause of action against the State Farm agent sounding in the tort of negligent misrepresentation. Specifically, the complaint sought a damages judgment against the agent on the ground that he had "negligently failed to inform Joseph Westrick that a welding truck which later became involved in an accident was not covered under Westrick's existing insurance policy." 137 Cal.App.3d at 687, 187 Cal.Rptr. 214. The Court of Appeal overturned a directed verdict that the trial judge had entered solely in favor of the agent—*holding that on the facts as alleged by the plaintiff the agent could be personally liable for damages on a negligence theory.* *Id.,* at 690, 187 Cal.Rptr. 214. Significantly, the *Westrick* court explicitly declared that it was intimating "no opinion concerning State Farm's liability. This issue was not reached below [by stipulation that the policy did not cover the welding truck] and need not be decided at this stage of the proceedings." *Id.,* at footnote 2.

It also is significant that in reaching its decision the *Westrick* court refused to confine its analysis to principles of contract or agency law but, instead, relied on norms with roots in the field of torts. 137 Cal. App.3d at 691–692, 187 Cal.Rptr. 214. Acknowledging that under well-established California law "an insurance agent who promises to procure insurance will indeed be liable for his negligent failure to do so,"

the Court of Appeal proceeded to reject the suggestion that "an agent can avoid liability for foreseeable harm caused by his silence or inaction merely because he has not expressly promised to assume responsibility." *Id.,* at 691, 187 Cal.Rptr. 214. Importantly, the Court turned to principles developed under the general law of torts to justify its rejection of this notion. As the Court emphasized in its next sentence, "[a] long line of California cases has recognized that a disparity of knowledge may impose an affirmative duty of disclosure." *Id.* Among the authorities the Court cited in support of this principle is the "rule [as] stated in the Restatement Second of Torts in section 551"—substantial portions of which the Court reproduced in footnote 3. Relying primarily on this norm from the torts arena, the Court held that under the facts as alleged by Mr. Westrick California law could impose a duty on the State Farm agent and that the plaintiff could state a cause of action against the agent for breach of that duty. Fundamentally, the Court held that the circumstances as alleged by Mr. Westrick imposed on the agent as an individual a duty (under tort law) to at least make additional inquiries. 137 Cal.App.3d at 692, 187 Cal.Rptr. 214.

The *Westrick* court reached this legal conclusion without even hinting that there was need to resort to a dual agency theory. In fact, there is no basis for inferring that the plaintiff even suggested that the individual defendant was not only State Farm's agent, but also his. For all that appears, the agent defendant was in precisely the same position as the agent defendants in the case at bar. Nor was there even a hint in the *Westrick* opinion that the individual agent defendant had somehow exceeded the scope of his agency or had failed to disclose fully his principal. Instead, the Court appears to have assumed (for purposes of its decision that a

claim could be stated against the agent personally) that the agent was acting within the scope of his agency. And it was clear that the plaintiff knew full well that the principal was State Farm (Westrick had been insured by State Farm for some 13 years at the time—even though the individual agent whom Westrick sued for damages had been Westrick's conduit to State Farm for only two years).

Given the clarity of the definition of the issue in *Westrick* and the considerable parallelism between the legally significant facts alleged there and here, on what basis can defendants in this remand proceeding contend that it is obvious under settled principles of California law that plaintiff in the case at bar could not state a claim against the individual agent defendants? Even though issued some sixteen years later, *Westrick* does not mention *Lippert*—a curious fact that defense counsel suggested in oral argument means that a *Lippert* defense was never raised in the *Westrick* litigation and that the *Westrick* court was not aware of the *Lippert* rule. While this speculation may not be unreasonable, it remains speculation. In the setting we confront here (motion to remand, burden on defendants, requirement that applicable California law be obvious and settled), we cannot base a ruling on speculation, especially speculation that contravenes a normally applicable presumption—that an appellate state court would know about relevant earlier pronouncements of important legal principles by a parallel appellate court in the same state. It would be disrespectful, at best, for a federal trial court (in a diversity setting) to presume that a state appellate court did not understand the law of its own state.

Our disinclination to ignore *Westrick* and our refusal simply to assume that that California court would have ruled differently if it had addressed *Lippert* issues is reinforced by another important feature of the California legal landscape. Even though it has been highly visible for twenty years, has been cited many times and has been discussed at length in several opinions, no court has suggested that *Westrick* was wrongly decided for any reason—let alone on the theory that the *Westrick* justices were ignorant of the legal pronouncements by the *Lippert* justices. Instead, *Westrick* has been cited and discussed with apparent approval on a good many occasions. *E.g., Butcher, supra; Paper Savers, supra; Clement v. Smith,* 16 Cal.App.4th 39, 19 Cal.Rptr.2d 676 (4th Dist.1993); and *Fitzpatrick, supra.* Moreover, it appears that *Westrick* was decided in the same spirit—and with the same eye on principles of general application in tort law—as a number of other cases that have been viewed as carving out a set of exceptions to the *Lippert* rule that is independent of the dual agency doctrine.

This set of exceptions has been captured under the phrase "special duty" in some opinions by California courts. In *Fitzpatrick v. Hayes,* 57 Cal.App.4th 916, 67 Cal.Rptr.2d 445 (1st Dist.1997), for example, one California court of appeal endorsed the categorization of pertinent authorities that another California court of appeal had recently set forth in *Paper Savers, Inc. v. Nacsa,* 51 Cal.App.4th 1090, 59 Cal.Rptr.2d 547 (2d Dist.1996) *review denied* 1997. According to the *Fitzpatrick* court's summary of the doctrinal environment, the general rule is that neither carriers nor their agents (as opposed to dual agents) have an affirmative duty, *sua sponte,* to offer advice about coverage or to make sure that an insured understands all of his options and/or is adequately insured. *Fitzpatrick* also squarely acknowledged, however, that this general rule changes, and a duty in an agent and a carrier may arise, when any one of the following circumstances can be proved:

(a) the agent misrepresents the nature, extent or scope of the coverage being offered or provided (as in *Free, Desai,* and *Nacsa* ), (b) there is a request or inquiry by the insured for a particular type or extent of coverage (as in *Westrick* ), or (c) the agent assumes an additional duty by either express agreement or by 'holding himself out' as having expertise in a given field of insurance being sought by the insured (as in *Kurtz* ).

*Fitzpatrick,* 57 Cal.App.4th at 927, 67 Cal. Rptr.2d 445.[5]

The *Paper Savers* description of the law that *Fitzpatrick* endorsed included a substantial section captioned by the Court of Appeal as follows: "AN INSURANCE *AGENT* CAN ASSUME A SPECIAL DUTY TOWARD HIS INSURED BY MISREPRESENTING POLICY TERMS." *Paper Savers,* 51 Cal.App.4th at 1096–1104, 59 Cal.Rptr.2d 547 (emphasis added). The first and primary source of authority cited and discussed by the *Paper Savers* court in this section was *Westrick.* Specifically, this 1996 opinion by the Court of Appeal pointed out that the *"Westrick* court held that based on the insured's inquiries and the agent's superior knowledge of the scope of an automatic coverage clause under the policy, the *agent* had 'the duty reasonably to inform an insured of the insured's rights and obligations under the insurance policy.'" 51 Cal.App.4th at 1097, 59 Cal.Rptr.2d 547 (emphasis added). Using principles from Westrick and other similarly spirited cases, the *Paper Savers* court proceeded to hold that a carrier's agent could be deemed to have assumed a "special duty" to the insured if the agent misrepresented

the meaning and effect of a particular endorsement. *Id.,* at 1104, 59 Cal.Rptr.2d 547.

At critical junctures, the *Paper Savers* court spoke not about the liability of the carrier, but about the liability that the carrier's agent could incur. For example, near the end of their lengthy and scholarly opinion, the unanimous *Paper Savers* justices declared that if "Nacsa [the carrier's agent] held himself out as an advisor to Peltier [the plaintiff] and interpreted the coverage in a way different from what the language of the policy indicated, Peltier is simply saying that *Nacsa may be liable* for his negligence, if proved. In this, he is correct." *Id.,* at 1104, 59 Cal.Rptr.2d 547 (emphasis added).

We also must emphasize that there was no suggestion of dual agency in *Paper Savers* —or that the Truck Insurance Exchange's agent, as the court repeatedly characterized him, was exposed to liability on the theory that he had exceeded the scope of his agency. That possibility simply wasn't mentioned—and played no role in the Court's analysis.

It is possible, of course, that the justices who unanimously joined in the *Paper Savers* opinion were oblivious to the distinction between liability in the carrier and personal liability in the carrier's agent, or that they thought that it was so obvious that the agent could not be personally liable that they paid no attention to this issue, but such naked possibilities are a woefully insufficient basis for concluding that the relevant California law is clearly settled, that under that law only a carrier is exposed to liability for the kind of con-

---

**5.** The cases referenced by the *Fitzpatrick* court are the following: *Free v. Republic Ins. Co.,* 8 Cal.App.4th 1726, 11 Cal.Rptr.2d 296 (1992); *Desai v. Farmers Ins. Exchange,* 47 Cal.App.4th 1110, 55 Cal.Rptr.2d 276 (1996); *Paper Savers v. Nacsa,* 51 Cal.App.4th 1090, 59 Cal.Rptr.2d 547 (1996); *Westrick v. State Farm Ins.,* 137 Cal.App.3rd 685, 187 Cal.Rptr. 214 (1982); and *Kurtz, Richards, Wilson & Co. v. Insurance Communicators Mktg. Corp.,* 12 Cal.App.4th 1249, 16 Cal.Rptr.2d 259 (1993).

duct ascribed by plaintiff to the agents in the case at bar, and that the language the courts in fact used in *Westrick*, Paper Savers and *Fitzpatrick* can't mean what it says.

Because courts always must be sensitive to judgments they disturb, and must attend with special care to what kinds of parties they will permit others to burden with litigation, we also cannot ignore the fact that courts like *Paper Savers* vacated judgments that trial courts already had entered in favor not only of carriers, but also of the individual agents. *E.g., Paper Savers*, 51 Cal.App.4th at 1092, 59 Cal. Rptr.2d 547. We should not presume that such courts would thoughtlessly enter orders whose foreseeable effect was to expose individual human beings to the risk of large adverse judgments and to require those human beings to undergo the expense and trauma of litigation.

Additional support for our conclusion that California law cannot be deemed 'settled' in the direction defendants contend derives from the fact that two judges of this court, both writing after the *Good* opinion was issued, have concluded that under California law agents of carriers can be exposed to personal liability for their negligence under the "special duty" rubric—independent of any allegation or evidence of dual agency or that the agents' actions fell outside the scope of their agency. In *Smith v. New England Mut. Life Ins. Co.*, 1998 WL 775124 (N.D.Cal.1998), Judge Illston concluded that "California courts have created exceptions to the *Lippert* rule by making agents personally liable for damages resulting from misrepresentations as to coverage. This exception is derived from the premise that 'representations as to the scope of coverage imposes [sic] upon the agent a "special duty" of care to the insured.' [quoting *Paper Savers*]." 1998 WL 775124 at *1. After noting

an additional basis on which such a special duty could be premised, Judge Illston went on to discuss, as a separate and independent possible ground for finding personal liability in an agent, "the theory of dual agency." *Id.*, at *2.

The second, even more recent opinion from this court that contradicts the position defendants take here is *Sun v. The Equitable Life Assurance Soc'y*, 2001 WL 764486 (N.D.Cal.2001). In a section captioned "Mr. Miller's Personal Liability," Judge Alsup considered many of the cases we have discussed above, including both *Lippert* and *Westrick*, then wrote: "While *Westrick* and *Butcher* may require that [the] insured ask a specific question, Equitable fails to address *Eddy, Clement*, or *Paper Savers*, which all held that an agent may assume a greater duty and be held *personally* liable for merely negligently misrepresenting the scope of coverage under a policy." *Id.*, at *3 (emphasis added).[6]

As counsel for defendants pointed out during oral argument on this motion, many of the opinions by California courts in this arena spend most of their analytical energy not on trying to determine which kinds of defendants (carriers and agents or just carriers) should be subject to suit, but on whether kinds of conduct alleged in the specific case at hand should be deemed sufficient to impose a duty on some defendant. Because the focus in these opinions has been primarily on the scope of duty, generally, rather than on which kinds of defendants can be charged with the duty, we concede that we cannot be fully confident that all the courts that have addressed these issues would conclude that the duty they identify extends not only to carriers and brokers/dual agents, but also to a carrier's agent who fully discloses his

---

6. *Eddy* refers to *Eddy v. Sharp*, 199 Cal. App.3d 858, 866, 245 Cal.Rptr. 211 (1988).

principal and whose conduct cannot be said to exceed the scope of his agency.

The standard applicable in this remand setting, however, does not demand that we be fully confident that California courts would recognize the cause of action against the agents. Instead, the standard asks us to determine whether it is clear that California courts would refuse to recognize such a cause of action. In resolving that question, we cannot simply assume that all the judges and justices whose opinions we have cited were oblivious to the implications for individual agents of the language they used, or that if the *Lippert* issues had been vigorously and clearly presented to them they would have held that the carriers' agents were insulated from personal liability. It is entirely possible, and more consistent with the judgments that have been overturned or vacated and the language the courts actually used in these cases, that what explains the absence of clear focus on the exposure of the agents as individuals in so many of these cases is that most of the time everyone is aware that the only pocket deep enough to pursue is the carrier's—or that the only relief of real value is a judicially compelled affirmation of coverage by the insurance policy in question.

### *CONCLUSION*

Given all the authorities and considerations set forth above, we hold that it is not at all clear that California courts would refuse to recognize a cause of action against the agents in this case under the factual allegations presented by plaintiff. Given that holding, and the non-diverse citizenship of the agent defendants, we ORDER that this action be REMANDED to the appropriate state court.

With entry of the remand order, this action is DISMISSED, without prejudice, from this court's docket. Accordingly, the court VACATES the October 16, 2002,

hearing that had been scheduled in connection with Defendants' Motion for Judgment on the Pleadings, filed June 11, 2002.

IT IS SO ORDERED.