Deborah GREENE, Joyce Trombley, Stephanie Gardner, Deborah Wilson, and Karen Tatomer, Plaintiffs,

v.

WYETH, formerly known as American Home Products Corporation; Wyeth–Ayerst Laboratories Division, a division of American Home Products Corp.; A.H. Robins Company, Incorporated; Wyeth–Ayerst Laboratories Company; American Home Products Subsidiary Holding Corporation; Wyeth Laboratories, Inc. (formerly known as Wyeth–Ayerst Pharmaceuticals, Inc., now known as Wyeth Pharmaceuticals, Inc.); Michael Panicari, M.D.; David M. Turner; and Does 1–20, inclusive, Defendants.

No. CVN040312LRHVPC.

United States District Court,
D. Nevada.

Oct. 29, 2004.

David Meany, White, Meany & Wetherall, LLP, Reno, NV, for Gardner, Stephanie, Plaintiffs.

J. Jorgensen, Beckley Singleton, Chtd., Las Vegas, NV, Adam LeBerthon, Arnold & Porter, LLP, Los Angeles, CA, Adam LeBurthon, PRO HAC VICE FIRM, NO., for Wyeth formerly known as American Home Products Corp., Defendant.

J. Jorgenson, Beckley Singleton, Chtd., Las Vegas, NV, Adam LeBurthon, PRO HAC VICE NO., for Wyeth Laboratories, Inc., Defendant.

J. Jorgensen, Beckley Singleton, Chtd., Las Vegas, NV, for American Home Products Subsidiary Holding Corp., Defendant.

J. Jorgensen, Beckley Singleton, Chtd., Las Vegas, NV, Adam LeBurthon, PRO HAC VICE FIRM NO., for Wyeth–Ayerst Laboratories Company, Defendant.

J. Jorgensen, Beckley Singleton, Chtd., Las Vegas, NV, for Wyeth–Ayerst Laboratories Division, Defendant.

J. Jorgensen, Beckley Singleton, Chtd., Las Vegas, NV, for David M. Turner, Defendant.

Edward Lemons, Lemons, Grundy & Eisenberg, Reno, NV, for Michael Panicari, MD, Defendant.

J. Jorgensen, Beckley Singleton, Chtd., Las Vegas, NV, for A.H. Robins Company, Defendant.

## ORDER

HICKS, District Judge.

Presently before this Court is a motion to remand (Docket No. 16) brought by Plaintiffs Deborah Greene, Joyce Trombley, Stephanie Gardner, Deborah Wilson, and Karen Tatomer ("Plaintiffs"). Defendants Wyeth, American Home Products Subsidiary Holding Corporation,[1] and Wyeth Pharmaceuticals, Inc.[2] (collectively,

---

1. The motion to stay states that it is brought by Defendants Wyeth, AHP Subsidiary Holding Corporation, and Wyeth Pharmaceuticals Inc. As "AHP Subsidiary Holding Corporation" is not named in the complaint, the Court assumes Defendants refer to the American Home Products Subsidiary Holding Corporation, a named Defendant.

2. According to the explanation provided in Defendants' motion to stay (Defs.' Mot. at 2:21–28), Defendants Wyeth, AHP Subsidiary Holding Corporation, and Wyeth Pharmaceuticals, Inc. are successor entities which now move on behalf of nearly all the companies associated with the named Defendant Wyeth. The motion to stay explains that on March 11, 2002, American Home Products Corporation changed its name to Wyeth. On June 20, 2001, Wyeth–Ayerst Laboratories Company merged with and into AHP Subsidiary Holding Corporation (which the Court believes is the same entity as American Home Products Subsidiary Holding Corporation), a wholly owned subsidiary of Wyeth. Finally, the motion to stay explains that on January 1, 1999, Wyeth Laboratories, Inc. was merged into Ayerst Laboratories, Inc., the name of which was later changed to Wyeth–Ayerst Pharmaceuticals, Inc; and, then again changed to the current entity, Wyeth Pharmaceuticals Inc.

Consequently, Wyeth moves on behalf of American Home Products Corporation and its unincorporated Wyeth–Ayerst Laboratories Division; American Home Products ("AHP") Subsidiary Holding Corporation moves on behalf of Wyeth–Ayerst Laboratories Company; and Wyeth Pharmaceuticals, Inc. moves on behalf of Wyeth Laboratories, Inc.

The explanation provided in the Defendants' motion to stay does not account for A.H. Robins Company, Inc. However, the Court notes that the counsel of record for A.H. Robins Company, Inc. is the same as for Defendants Wyeth, Wyeth–Ayerst Laboratories Division, Wyeth–Ayerst Laboratories

the "Wyeth Defendants") have submitted an opposition (Docket No. 26), to which Plaintiffs subsequently replied (Docket No. 38). Also before the Court is the Wyeth Defendants' "Motion to Stay all Proceedings in this Court Pending Transfer to MDL 1203" (Docket No. 11). Plaintiffs have filed an opposition (Docket No. 22), and the Wyeth Defendants have submitted a reply (Docket No. 31). Upon review of the record and relevant law, the Court makes the following disposition:

## FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiffs' case is one among thousands of product liability cases recently brought by individuals who allege to have suffered heart valve injuries as a result of their use of the diet drugs Pondimin and Redux (hereinafter, "Fen–Phen").[3] Although occasionally other defendants are named, for the most part these cases are brought against Wyeth—the company which manufactured, marketed, and sold Fen–Phen—and other Wyeth affiliates. Due to the high volume of Fen–Phen litigation across the nation, a Judicial Panel on Multidistrict Litigation (the "Panel") has been authorized, pursuant to 28 U.S.C. § 1407, to coordinate those lawsuits over which the federal courts have jurisdiction. The Panel is responsible for conditionally transferring all federal cases to the Multidistrict Litigation court, *see id.*, which is in the United States District Court for the Eastern District of Pennsylvania (the

"MDL court"). The Plaintiffs in this action originally filed their claims in state court. On June 16, 2004, the Wyeth Defendants removed the case to federal court on the basis of diversity jurisdiction. Plaintiffs' complaint stated claims not only against Wyeth and its affiliates (collectively, the "diverse Defendants"), but also against two Nevada citizens, Defendants Michael Panicari, M.D. and David M. Turner (collectively, the "non-diverse Defendants"). Therefore, on the face of the complaint it appeared that complete diversity was lacking in the case, and the Court was without jurisdiction. However, the Wyeth Defendants' notice of removal asserts that the non-diverse Defendants have been fraudulently joined in the case, and therefore cannot defeat diversity jurisdiction.

In addition to removing the case to this Court, the Wyeth Defendants gave notice of this case to the Panel and requested transfer to the MDL court. Simultaneously, the Wyeth Defendants filed a motion requesting a stay of all proceedings until such time as the Panel has had the opportunity to transfer the case. The Panel has not yet transferred the case to the MDL court, nor is it known when it will do so. Consequently, this Court continues to have jurisdiction. *See Rivers v. Walt Disney Co.*, 980 F.Supp. 1358 (C.D.Cal.1997) (citing the Multidistrict Litigation Panel holding that "the pendency of a motion or conditional transfer order [does] not affect or suspend orders and pretrial proceedings

Company, American Home Products Subsidiary Holding Corporation, and Wyeth Laboratories, Inc. (See Certificate as to Interested Parties at 1:27–2:2) (Docket No. 8). Therefore, the Court assumes that Defendants' motion is brought on behalf of all parties named in the complaint other than Michael Panicari, M.D., David M. Turner, and Does 1–20.

**3.** The abbreviated name, "Fen–Phen" actually refers to the popular diet drug combination of

Fenfluramine, marketed as Pondimin, and Phentermine. Dexfenfluramine, which was marketed as Redux, was also used in a combination with Phentermine which is commonly referred to as "Dexfen-phen." For the purpose of convenience, however, the Court will utilize the well-known moniker, "Fen–Phen," when referring to the use of either Pondimin or Redux or any combination of those drugs with Phentermine.

in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court").

## LEGAL STANDARD FOR MOTIONS TO REMAND

Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for any district ... where such action is pending." 28 U.S.C. § 1441(a). One instance in which the district courts of the United States have "original jurisdiction" is where there is complete diversity between the parties and the amount in controversy exceeds $75,000.

■ The proper procedure for challenging removal is a motion to remand, and a federal court must order remand if there is any defect which causes federal jurisdiction to fail, or if there is any defect in the removal procedure. 28 U.S.C. § 1447(c). The removal statutes are construed restrictively, and any doubts about removability are resolved in favor of remanding the case to state court. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992). On a motion to remand, the removing defendant faces a strong presumption against removal, and bears the burden of establishing that removal was proper by a preponderance of evidence. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403–404 (9th Cir.1996); *Gaus*, 980 F.2d at 567.

## DISCUSSION

Several issues are presented by the motions before the Court. Initially, the Wyeth Defendants request that this Court grant their motion to stay all proceedings pending the Panel's transfer of this case to the MDL court. Staying this action would preclude the Court from ruling on Plaintiffs' motion to remand. However, if the Court opts to deny the motion to stay, two issues are posed by the pending motion for remand: (1) whether the case is subject to diversity jurisdiction and therefore properly removed to the federal court; and (2) if the case before the Court is not subject to diversity jurisdiction, whether the Court should sever the Plaintiffs who are seeking claims against the non-diverse Defendants so that those Plaintiffs' cases may be remanded to state court, while the remaining Plaintiffs with claims against only the Wyeth Defendants may proceed in federal court.

### I. The Wyeth Defendants' Motion to Stay

■ Although the Court has jurisdiction to decide the remand issue at this time, *see, e.g. Rivers v. Walt Disney Co.*, 980 F.Supp. 1358 (C.D.Cal.1997), the Wyeth Defendants request a stay of all proceedings until such time as the MDL court has asserted jurisdiction over the case. The Wyeth Defendants argue that the MDL court is better suited to consider the remand issue, citing in support an unpublished opinion in which the MDL court currently assigned to the Fen–Phen litigation states, without providing any detail, that it is in the best position to evaluate motions to remand such as the one brought by Plaintiffs. This Court disagrees. The central inquiry in determining whether the jurisdictional issue is more appropriately resolved by the MDL court should be whether deferring to that court would advance the interests for which the statutes authorizing multidistrict litigation were intended: "Section 1407 was intended to promote the 'just and efficient conduct' of the actions transferred [to the

MDL court]." *See, e.g. In re Ivy*, 901 F.2d 7 (2d Cir.1990) (citing H.R.Rep. No. 1130, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Admin. News 1898, 1900). *See also Meyers v. Bayer AG*, 143 F.Supp.2d 1044, 1049 (E.D.Wis.2001) (citing H.R.Rep. No. 90–1190). As explained in more detail below, this Court concludes that determination of the jurisdictional issue presented in this case will rely on examination of factual issues and interpretation of Nevada law. The Wyeth Defendants have not provided the Court any authority establishing that the MDL court has previously considered the issue of Nevada law which is raised; and, in any event, it is clear that a court within the District of Nevada is best-suited for consideration of the matter. *See, e.g. Kohl v. American Home Products Corp.*, 78 F.Supp.2d 885, 888 (W.D.Ark.1999) (noting that the remand issue dealt with "a unique question wholly dependent on the law of the State of Arkansas"); *Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft*, 54 F.Supp.2d 1042, 1048 at n. 2 (D.Kan.1999) (addressing the remand issue in part because Kansas law applied). Moreover, the Court finds that the interest of expediency weighs in favor of determining the motion to remand. It is unknown when the multilitigation panel will issue a conditional transfer order to the MDL court. Even once it does so, the Plaintiffs are then provided an opportunity to contest the transfer, which will result in proceedings that further delay determination of the motion to remand. As the parties have already advised this Court of the issues involved during briefing and oral argument, it is unnecessary to cause additional delay by staying proceedings so that another court may determine the motion.

Therefore, the Court will deny the Wyeth Defendants' motion to stay and consider Plaintiffs' motion to remand.

## II. Plaintiffs' Motion to Remand

Under 28 U.S.C. 1441(a), defendants may remove any civil action brought in state court if there is federal jurisdiction. Section 1441(b), however, states that diversity jurisdiction cases are "removable only if none of the parties in interest properly joined and served as defendants is a citizen of the state in which such action is brought." The Wyeth Defendants have removed this case, and now oppose remand, on the grounds that the non-diverse Defendants are fraudulently joined and should not be permitted to destroy diversity. If the Wyeth Defendants are correct, then the non-diverse Defendants should be dismissed from the case, which would result in creating the complete diversity necessary for this Court to have original jurisdiction. Even if the Wyeth Defendants are incorrect, however, the Court must consider whether it is appropriate to sever the non-diverse Defendants, which will result in a portion of the case proceeding in federal court.

### A. Diversity Jurisdiction

■ It is uncontested that the Plaintiffs' complaint names two non-diverse Defendants, Michael Panicari, M.D. ("Panicari"), who prescribed Fen–Phen to Plaintiff Trombley, and David M. Turner ("Turner"), a sales representative of Redux, which was used by Plaintiff Tatomer.[4] Ordinarily, the court relies on only the face of the complaint to determine if diversity is present. *Ritchey v. Upjohn Drug Company*, 139 F.3d 1313, 1318 (9th Cir.1998).

---

**4.** Defendants contend, and Plaintiffs do not dispute, that Tatomer is the only Plaintiff in this case who ingested Redux rather than Pondimin. (Defs.' Opp. at 25:11–6, Exs. X, Z, DD, and EE). Though Defendant Turner did promote Redux while employed as a sales representative, he did not promote Pondimin. (Id. at 25:11–13).

However, "[a]n exception presents itself ... where the defendants advocating removal assert that there has been a fraudulent joinder, which occurs when a plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state ...." *Id.* In such cases, the defendant seeking removal is entitled to present the facts and submit evidence which shows that the joinder is fraudulent. *Id.* (citing *McCabe v. General Foods Corp.,* 811 F.2d 1336, 1339 (9th Cir.1987); *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97–99, 42 S.Ct. 35, 37–38, 66 L.Ed. 144 (1921)). The Wyeth Defendants argue that the joinder of the non-diverse Defendants is fraudulent because the statute of limitations has run on any possible claim against them; and indeed, the statute of limitations is one example identified by the *Ritchey* court as providing a basis upon which a court may find a fraudulent joinder. *Id.* at 1320. Although it is possible to create diversity by proving that the statute of limitations has run against the non-diverse Defendants, a defendant has the burden of proof in this regard. The Court now turns its attention to whether the Wyeth Defendants have met this burden.

■ Initially, the Court notes that the focus of the parties' pleadings is whether Panicari has been fraudulently joined, and Turner's joinder is addressed as if an afterthought. Plaintiffs defend their joinder of Turner on the grounds that he is potentially liable under a strict products liability theory, and that he may be individually liable for torts he committed while acting within the course and scope of his agency of employment. The Wyeth Defendants' attack on the validity of these arguments largely rests on the proposition that Plaintiffs' complaint does not state sufficient facts to support these claims. (Defs.' Opp. at 25:11–27:9). In light of the liberal pleading requirements set forth in the Federal Rules of Civil Procedure,[5] and the lack of more comprehensive briefing on the matter, the Court cannot conclude that no valid claims are brought against Turner as a matter of well-settled law. However, it has become clear through the evidence presented by the parties that Plaintiff Tatomer is the only named Plaintiff with any potential claim against Turner.[6]

■ With regard to Panicari, the parties agree that the claims brought against the doctor are governed by N.R.S. 41A.097, which states:

[A]n action for injury or death against a provider of health care may not be commenced more than 4 years after the date of injury or two years after the plaintiff discovers or through the use of reasonable diligence should have discovered the injury, whichever occurs first ....

NRS 41A.097(1). Accordingly, the parties dispute whether both the four and the two-year statute of limitations have run. The argument largely revolves around a definitional debate as to the meaning of "injury" in the statute's language regarding the time limit imposed "after the date of injury ...." *Id.* The Wyeth Defendants argue that because the drugs were taken off the market in 1997, any injury must have occurred by that time at the latest, and suit would therefore be barred by the four-year statute of limitations. On the other hand, Plaintiffs assert that "injury" has been defined by the Nevada Supreme Court as referring to a " 'legal injury,' *i.e.,* the presence of all essential elements of the mal-

---

**5.** "Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required." Fed. R.Civ.P. 8(e)(1).

**6.** *See supra* note 4.

practice cause of action." *Massey v. Litton,* 99 Nev. 723, 669 P.2d 248, 250 (1983).[7] Under this definition, the statute of limitations would not start running on the date that the medication was ingested;[8] but rather, the limitations period would run from the date Plaintiffs actually suffered an actionable injury. *Id.See also Gilloon v. Humana, Inc.,* 100 Nev. 518, 520, 687 P.2d 80 (1984) (holding that the statute of limitations on a wrongful death action did not begin to run at the time the injury was inflicted, but rather at the time of the actual death). In this regard, Plaintiffs point out that they were asymptomatic initially. Moreover, there is no proof that the Plaintiffs actually suffered an "FDA positive" heart valve injury anytime prior to their diagnosis.

Secondly, the parties dispute whether the statute of limitations has run under the second part of NRS 41A.097(1), which sets a limitation of two years from the date that, through the use of reasonable diligence, a plaintiff should have discovered the injury. Under the statute, a plaintiff is required to use due diligence in determining the existence of a cause of action. *Sierra Pacific Power Co. v. Nye,* 80 Nev. 88, 389 P.2d 387 (1964). Citing numerous advertisements and news reports, the Wyeth Defendants argue that unprecedented national and local publicity about the possible health effects of diet drugs should have alerted Plaintiffs to the potential injury. However, Plaintiffs contend that there were also other news reports—based on studies funded by the drug companies—stating that the risks posed by diet drugs were small.

The Court concludes that the various arguments posed by the Wyeth Defendants in asserting that the statute of limitations bars the actions against the non-diverse Defendants are insufficient to warrant a finding of fraudulent joinder. The Court is obligated to strictly construe the removal statute against removal, *Harris v. Provident Life & Acc. Ins. Co.,* 26 F.3d 930, 932 (9th Cir.1994), and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1992) (citing *Libhart v. Santa Monica Dairy Co.,* 592 F.2d 1062, 1064 (9th Cir.1979)). *See also Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). Because of this, "[t]here is a presumption against finding fraudulent joinder, and defendants who assert that [a] plaintiff has fraudulently joined a party carry a heavy burden of persuasion." *Plute v. Roadway Package System, Inc.,* 141 F.Supp.2d 1005, 1008 (N.D.Cal.2001) (citing *Nishimoto v. Federman–Bachrach & Assocs.,* 903 F.2d 709, 712 n. 3 (9th Cir.1990)); *Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1195 (9th Cir. 1988). *See also Macey v. Allstate Property and Cas. Ins. Co.,* 220 F.Supp.2d 1116 (N.D.Cal.2002). In asserting fraudulent joinder, the Wyeth Defendants bear the burden of proving that the Plaintiffs' failure to state a cause of action against the non-diverse Defendants is obvious accord-

---

7. Although the *Massey* court was defining "injury" for the purpose of the two-year statute of limitations, the Court notes in a later case: "It is to be presumed that the Legislature intended the term 'injury' to have the same meaning in the parallel two-year and four-year limitation periods of the statute." *Gilloon v. Humana, Inc.,* 100 Nev. 518, 520, 687 P.2d 80 (1984).

8. In fact, the Nevada Supreme Court appears to have expressly rejected this definition when it noted that " '[i]njury' could mean the allegedly negligent act or omission; the physical damage resulting from the act or omission; or the 'legal injury,' *i.e.,* all essential elements of the malpractice cause of action," *id.* at 250, and opted for the latter definition over the former.

ing to settled rules of state law. *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313 (9th Cir.1998) (citing *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336 (9th Cir.1987)). As the Wyeth Defendants attempt to prove this by showing that the statute of limitations has run on the asserted claims, their task becomes even more onerous because the statute of limitations itself is an affirmative defense for which defendants ordinarily bear the burden of proof. *See, e.g., Ward v. Westinghouse Canada, Inc.*, 807 F.Supp. 91, 93 (N.D.Cal.1992). Accordingly, the Court must resolve all material ambiguities in state law in the Plaintiffs' favor. Plaintiffs raise a colorable argument in support of their interpretation of Nevada's statute of limitations. Where there is a "non-fanciful possibility" that the Plaintiffs can state a claim against the non-diverse Defendants, the Court must remand." *Macey v. Allstate Property and Cas. Ins. Co.*, 220 F.Supp.2d 1116, 1117–1118 (N.D.Cal.2002).

With regard to the Wyeth Defendants' assertion that the two-year statute of limitations regarding discovery of an injury has run on Plaintiffs' claims, the Nevada Supreme Court has made it clear that a litigant has the right to a trial where the "slightest doubt as to the facts exist." *Oak Grove Investors v. Bell & Gossett Co.*, 99 Nev. 616, 623, 668 P.2d 1075, 1079 (1983). This is particularly true where the question is raised, as it is here, whether Plaintiffs exercised proper diligence in the discovery of their injuries. *See In re Swine Flu Products Liability Litigation*, 764 F.2d 637, 640 (9th Cir.1985) (holding that what "constitutes due diligence is necessarily a case-by-case determination"). As explained by the Nevada Supreme Court:

> Whether plaintiffs exercised reasonable diligence in discovering their causes of action "is a question of fact to be determined by the jury or trial court after a

full hearing." *Millspaugh v. Millspaugh*, 96 Nev. 446, 448, 611 P.2d 201, 203 (1980). Dismissal on statute of limitations grounds is only appropriate " 'when uncontroverted evidence irrefutably demonstrates plaintiff discovered or should have discovered' " the facts giving rise to the cause of action. *Nevada Power Co. v. Monsanto Co.*, 955 F.2d 1304, 1307 (9th Cir.1992) (quoting *Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873, 877 (9th Cir.1984)).

*In Bemis v. Estate of Bemis*, 114 Nev. 1021, 1025, 967 P.2d 437, 440 (1998). *See also Nevada Power Co.*, 955 F.2d at 1308 (citing *Timmel v. Moss*, 803 F.2d 519, 521 (9th Cir.1986)). The Wyeth Defendants' reliance on media coverage in asserting that Plaintiffs should have discovered their injuries earlier is unconvincing, especially in light of the Ninth Circuit holding that "a series of press releases, accompanied by 'Dear Doctor' letters to over 200,000 physicians ... did not put a plaintiff who had suffered injuries arising out of her use [of a medical device] on notice for purposes of the discovery rule." *Swine Flu Products Liability Litigation*, 764 F.2d at 641 (citing *Allen v. A.H. Robins*, 752 F.2d 1365, 1370–71 (9th Cir.1985)). Rather, the court found that it was necessary to determine whether the general community awareness was sufficient to find reasonable notice to plaintiff. *Id.* Relying on this authority, another district court has held that the mere existence of extensive news coverage does not establish that a plaintiff actually saw the coverage, and therefore cannot be conclusive proof of lack of due diligence. *Ritchie v. U.S.*, 210 F.Supp.2d 1120, 1129 (N.D.Cal.2002) (internal citations omitted). In short, the Wyeth Defendants' opposition to remand must overcome (1) the burden of proof required with regard to both remand issues and the statute of limitations; (2) the necessity of proving a join-

der is fraudulent based upon "settled law" and the presumption against finding a fraudulent joinder; and (3) the scepticism with which Courts receive evidence of media coverage for the purpose of proving a lack of due diligence. Though, upon closer analysis of the facts and law, the Nevada Supreme Court may ultimately find that the statute of limitations bars suit against the non-diverse Defendants, the burdens of proof placed upon the Wyeth Defendants at this juncture create an obstacle which they are unable to surmount. The Court finds that there is no fraudulent joinder.

### B. Severance of Non–Diverse Defendants

■ The Wyeth Defendants assert an alternative argument which would permit part of this case to proceed within the Court's jurisdiction. That is, that the joinder of the non-diverse Defendants does not comply with the Federal rules, and therefore severance of the cases against those Defendants is warranted. If the Court severs this case in the manner propounded by the Wyeth Defendants, the remaining case will be comprised solely of Defendants who are not residents of Nevada, and the Court will therefore have diversity jurisdiction.

The Nevada rule on permissive joinder, which is nearly identical to the federal rule, states that:

> All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or of fact common to all these persons will arise in the action. All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities.

Nev.R.Civ.P.20. *See also* Fed.R.Civ.P. 20. Upon review of this statute and the pleadings of the parties, the Court determines that the non-diverse Defendants have been improperly joined in this case. Although each of the Plaintiffs' claims against the Wyeth Defendants may regard the "same transaction or occurrence"—i.e., the manufacture and marketing of Fen–Phen—this characterization of the complaint would not apply equally to the physician and sales representative who are joined as Defendants. *See, e.g. Jones v. Nastech Pharmaceutical,* 319 F.Supp.2d 720, 727–28 (S.D.Miss.2004). Only two of the Plaintiffs, Trombley and Tatomer, actually have claims against the non-diverse Defendants. Plaintiff Trombley is the only individual who was prescribed Fen–Phen by Panicari; Plaintiff Tatomer is the only Plaintiff named in the complaint who took Redux, the drug which Turner promoted while employed as a sales representative. With the exception of Trombley and Tatomer's individual claims against these non-diverse Defendants, the only common attribute among the Plaintiffs' claims against the Wyeth Defendants and those against the non-diverse Defendants is that each Plaintiff ultimately ingested Fen–Phen due to the alleged actions of one or more of these Defendants. Individual circumstances, actions, and omissions were involved in each Plaintiff's choice to ingest the medication,

as well as each Defendant's role in, and responsibility for, that decision. Several courts have held that the ingestion of medication among various Plaintiffs alone cannot constitute the "same transaction or occurrence." *See, e.g., Graziose v. American Home Products Corp.,* 202 F.R.D. 638, 640–641 (D.Nev.2001); *See, e.g., In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation,* 2004 WL 2095451, at *1 (E.D.Pa. Sept. 20, 2004); *Lee v. Mann,* 51 Va. Cir. 465, 2000 WL 724046, at *2 (Va. Cir. Ct. April 5, 2000) (holding that claims against a drug manufacturer and a malpractice claim against a prescribing physician did "not arise out of the same 'transaction or occurrence'"). This Court agrees. "[C]laims of plaintiffs who have not purchased or received diet drugs from an identical source, such as a physician, hospital or diet center, do not satisfy the same transaction or occurrence requirement." *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products Liability Litigation,* 294 F.Supp.2d 667, 678 (E.D.Pa.2003) (citing *Simmons v. Wyeth Labs.,* 1996 WL 617492, at *4 (E.D.Pa. Oct. 24, 1996)). The Court concludes that the parties in Plaintiffs' complaint are procedurally misjoined.

In recent years the term "fraudulent misjoinder" has been coined to explain a standard by which courts may gauge whether severance of improperly joined parties is warranted. *See, e.g. Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1360 (11th Cir.1996), *abrogated on other grounds, Cohen v. Office Depot, Inc.,* 204 F.3d 1069 (11th Cir.2000); *Lyons v. Lutheran Hosp. of Ind.,* 2004 WL 2272203, at *4 (S.D.Ind. Sept. 15, 2004) (*citing Conk v. Richards & O'Neil, LLP,* 77 F.Supp.2d

956, 970–71 (S.D.Ind.1999)); *Burns v. Western Southern Life Ins. Co.,* 298 F.Supp.2d 401, 402–03 (S.D.W.Va.2004). The rule regarding severance where there is a "fraudulent misjoinder" is new and not universally applied. *See Burns,* 298 F.Supp.2d at 402 (citing 14B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3723 (3rd ed.2003); Robert A. Weems, *Mississippi Law of Torts* § 21:3 (2003)). It appears the majority of courts have held that the misjoinder must be "egregious" to warrant severance, with some courts imposing a bad faith analysis into the standard. *See, e.g. Coleman v. Conseco, Inc.,* 238 F.Supp.2d 804, 814 (S.D.Miss.2002) (holding that severance is only warranted where "joinder would not be permissible under the applicable rules of civil procedure, and collusive joinder to defeat the diversity jurisdiction of the federal courts [is] also ... present"). However, other courts have refused to consider whether the misjoinder of parties is egregious, and have instead held that misjoinder alone justifies severing the parties. *See, e.g., Rezulin Products Liability Litigation,* 168 F.Supp.2d 136, 147–48 (S.D.N.Y.2001); *Burns v. Western Southern Life Ins. Co.,* 298 F.Supp.2d 401, 403 (S.D.W.Va.2004) (noting that considering the egregiousness of a misjoinder "would add a very subjective and troublesome element of complexity to an already knotty calculus"); *Grennell v. Western Southern Life. Ins. Co.,* 298 F.Supp.2d 390, 396 (S.D.W.Va.2004).

■ Although the Ninth Circuit has not yet published an opinion addressing the fraudulent misjoinder rule, this Court agrees with the Fifth [9] and Eleventh [10] Circuits that the rule is a logical extension of

---

**9.** *See, e.g., In re Benjamin Moore & Co.,* 309 F.3d 296 (5th Cir.2002).

**10.** *See, e.g., Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1360 (11th Cir.1996), *abrogated on other grounds, Cohen v. Office Depot, Inc.,* 204 F.3d 1069 (11th Cir.2000).

the established precedent that a plaintiff may not fraudulently join a defendant in order to defeat diversity jurisdiction in federal court. Although it is impossible to know which standard would be employed by the Ninth Circuit in determining whether the misjoinder warrants severance, this Court is mindful of its authority under the Federal Rules of Civil Procedure, Rule 21, to add or drop parties to a suit "at any stage of the action and on such terms as are just." Therefore, the Court is inclined to sever claims where the joinder is procedurally inappropriate and clearly accomplishes no other objective than the manipulation of the forum, and where the rights of the parties and interest of justice is best served by severance. In so holding, the Court rejects the notion that Plaintiffs have committed an egregious act or a fraud upon the Court. In this circuit, fraudulent joinder is a term of art which "does not impugn the integrity of plaintiffs or their counsel and does not refer to an intent to deceive." *See King ex rel. King v. Aventis Pasteur, Inc.*, 210 F.Supp.2d 1201, 1214 (D.Or.2002) (citing *Lewis v. Time, Inc.*, 83 F.R.D. 455, 460 (E.D.Cal. 1979)) *aff'd.*, 710 F.2d 549 (9th Cir.1983). *See also Mercado v. Allstate Ins. Co.*, 340 F.3d 824, 826, (9th Cir.2003) (noting that "fraudulent joinder" is a term of art); *Crone v. Pfizer, Inc.*, 2004 WL 1946386, at *2 (N.D.Cal. Sept. 1, 2004). Moreover, no comment is intended on the Plaintiffs' attempts to avoid federal jurisdiction, as it is generally a plaintiff's prerogative to draft his complaint in a manner that grants him his choice of forum, where such choice exists. A plaintiff is entitled to avoid federal jurisdiction by exclusive reliance on state law, *see, e.g., Torres v. Chevron U.S.A., Inc.*, 2004 WL 2348274, at *1 (N.D.Cal. Oct. 18, 2004) (citing *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 57 L.Ed. 716 (1913)), or by pleading less than the jurisdictional amount, in order to defeat diversity jurisdiction. *See Jones v. Allstate Ins. Co.*, 258 F.Supp.2d 424, at 427 (D.S.C.2003) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294, 58 S.Ct. 586, 82 L.Ed. 845 (1938)). Similarly, "under our dual court system[, if] a potential plaintiff has a choice between a state forum and a federal forum, it is his privilege to exercise that choice subject to legal limitations, and if he can avoid the federal forum by the device of properly joining a [non-diverse] defendant or a [non-diverse] co-plaintiff, he is free to do so." *Iowa Public Service Co. v. Medicine Bow Coal Co.*, 556 F.2d 400, 406 (8th Cir.1977). *See also Oliva v. Chrysler Corp.*, 978 F.Supp. 685, 688–89 (S.D.Tex.1997); 14 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure*, § 3641 (2d ed.1985). However, where the non-diverse party cannot be properly joined under the Federal Rules of Civil Procedure, other interests prevail over that of permitting a plaintiff's choice of forum. The Court concludes that the Wyeth Defendants' statutory right of removal has been frustrated by Plaintiffs' improper joinder, and the interests of judicial expediency and justice weigh in favor of severance.

## CONCLUSION

It is therefore ORDERED that the Wyeth Defendants' motion to stay (Docket No. 11) is DENIED.

It is further ordered that Plaintiffs' motion to remand (Docket No. 16) is GRANTED in part and DENIED in part. The claims brought by Plaintiffs Trombley and Tatomer shall be severed from the case and remanded to state court. Plaintiffs' motion to remand is denied with regard to the remaining Plaintiffs.

As a housekeeping matter, it is further ordered that Plaintiffs' objections and motion to strike (Docket Nos. 14 & 15) re-

garding the Wyeth Defendants' statement concerning removal is DENIED as moot.