Patrick OSEI, Plaintiff,

v.

COUNTRYWIDE HOME LOANS; Lending 1st Mortgage; Mortgage Electronic Registration Systems, Inc.; Delta Mortgage & Real Estate; Jeffrey Alan Pelletier; Jeffrey Paul Olson; Jeff Bryan Delora; and Does 1–20, inclusive, Defendants.

No. Civ. S–09–1981 LKK/JFM.

United States District Court, E.D. California.

March 3, 2010.

Randolph Cooke, Randolph Cooke Law Firm, Sacramento, CA, for Plaintiff.

Laju Obasaju, Bryan Cave LLP, Santa Monica, CA, Matthew Corin Bradford, Bradford Law Offices, Stockton, CA, for Defendants.

## *ORDER*

LAWRENCE K. KARLTON, Senior District Judge.

This case concerns plaintiff's mortgage and foreclosure thereon. Plaintiff's First Amended Complaint ("FAC") names seven defendants and enumerates nine causes of

action. Defendants Countrywide Home Loans, Inc. ("CHL") and Mortgage Electronic Registration Systems ("MERS") moved to dismiss all claims against them and moved to strike portions of the FAC. Defendants Pelletier Finance, Inc. dba Delta Mortgage and Real Estate ("Delta"), Jeffrey Allen Pelletier ("Pelletier"), and Jeffrey Paul Olson ("Olson") moved to dismiss all but two claims against them, or in the alternative, for a more definite statement. For the reasons stated below, the motions to dismiss are granted in part.

## I. BACKGROUND

Defendants CHL and MERS moved to dismiss and to strike on September 28, 2009; defendants Delta, Pelletier, and Olson moved to dismiss on September 25, 2009. Plaintiff filed oppositions to both motions on October 27, 2009 and October 23, 2009, respectively. Hearings were vacated for all motions.

### A. Initial Loan [1]

Plaintiff alleges that on or about August 24, 2006, Jeff Bryan Delora ("Delora"), an employee of defendant Delta, solicited plaintiff Patrick Osei ("Plaintiff" or "Osei") to refinance his home. FAC ¶¶ 13, 23. Delora offered plaintiff a fixed rate loan with a low interest rate and no prepayment rider. *Id.* at ¶ 26. Plaintiff claims that he was told his mortgage payment would be $1,274.39. *Id.* Plaintiff was advised that if the loan ever became unaffordable, defendants would refinance it to an affordable loan. *Id.* at ¶ 28. Plaintiff alleges that he was not provided with copies of loan documents prior to closing, and at closing was only given a few minutes to sign the documents. *Id.* at ¶ 29. Plaintiff claims to have received no required copies of a proper notice of cancellation. *Id.* The

loan was finalized on November 24, 2006. *Id.* at ¶ 31.

Plaintiff claims that contrary to Delora's representations he was sold an adjustable rate loan, negatively amoritizing, with a large prepayment rider. *Id.* at ¶ 26. Plaintiff's payments were initially $1,274.39, but later increased to $3,048.73. *Id.* Plaintiff contends that Delora inflated his income on his loan application, without plaintiff's knowledge, by $7,640. *Id.* at ¶ 27. Plaintiff alleges that defendant Lending 1 Mortgage ("Lending") paid their employees commissions based on the volume of loans they sold to consumers. *Id.* at ¶ 35. Further, plaintiff alleges that Lending's loan officers received greater commissions or bonuses for placing borrowers in loans with high yield spread premiums. *Id.* According to the plaintiff, this resulted in borrowers being steered by Lending into loans with unfavorable terms and for which they were not qualified. *Id.* The deed of trust for plaintiff's mortgage lists defendant Mortgage Electronic Registration Systems ("MERS") as nominee for the lender and the lender's successors and assigns. It also indicates that MERS is the beneficiary under the instrument. Lending 1st Mortgage is listed as the lender.

### B. Foreclosure of Plaintiff's Home Loan

It is not clear from the face of plaintiff's FAC when, or how, foreclosure was brought against the plaintiff. Plaintiff contends that MERS is not in possession of the promissory note for plaintiff's mortgage, and does not have the right to payment under the note. FAC ¶¶ 34, 37.

On or about May 28, 2009, plaintiff sent a Qualified Written Request ("QWR") to

---

**1.** These facts are taken from the allegations in the FAC unless otherwise specified. The allegations are taken as true for purposes of this motion only.

defendant CHL, which included a demand for rescission of the loan under TILA. *Id.* at ¶ 33. Plaintiff alleges that CHL did not properly responded to the request. *Id.*

Plaintiff filed his first complaint on June 17, 2009, and filed the amended complaint at issue here on September 11, 2009.

## II. STANDARD

### A. Standard for a Fed.R.Civ.P. 12(b)(6) Motion to Dismiss

A Fed.R.Civ.P. 12(b)(6) motion challenges a complaint's compliance with the pleading requirements provided by the Federal Rules. In general, these requirements are established by Fed.R.Civ.P. 8, although claims that "sound[ ] in" fraud or mistake must meet the requirements provided by Fed.R.Civ.P. 9(b). *Vess v. Ciba–Geigy Corp.*, 317 F.3d 1097, 1103–04 (9th Cir.2003).

### 1. Dismissal of Claims Governed by Fed.R.Civ.P. 8

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must give defendant "fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (internal quotation and modification omitted).

To meet this requirement, the complaint must be supported by factual allegations. *Ashcroft v. Iqbal,* — U.S. —, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009). "While legal conclusions can provide the framework of a complaint," neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth. *Id.* at 1949–50. *Iqbal* and *Twombly* therefore proscribe a two step process for evaluation of motions to dismiss. The court

first identifies the non-conclusory factual allegations, and the court then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief." *Id.*; *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).

"Plausibility," as it is used in *Twombly* and *Iqbal,* does not refer to the likelihood that a pleader will succeed in proving the allegations. Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955). A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1988).

The line between non-conclusory and conclusory allegations is not always clear. Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). While *Twombly* was not the first case that directed the district courts to disregard "conclusory" allegations, the court turns to *Iqbal* and *Twombly* for indications of the Supreme Court's current understanding of the term. In *Twombly,* the Court found the naked allegation that "defendants 'ha[d] entered into a contract, combination or conspiracy to prevent competitive entry ... and ha[d] agreed not to compete with one another,'"

absent any supporting allegation of underlying details, to be a conclusory statement of the elements of an anti-trust claim. *Id.* at 1950 (quoting *Twombly,* 550 U.S. at 551, 127 S.Ct. 1955). In contrast, the *Twombly* plaintiffs' allegations of "parallel conduct" were not conclusory, because plaintiffs had alleged specific acts argued to constitute parallel conduct. *Twombly,* 550 U.S. at 550–51, 556, 127 S.Ct. 1955.

*Twombly* also illustrated the second, "plausibility" step of the analysis by providing an example of a complaint that failed and a complaint that satisfied this step. The complaint at issue in *Twombly* failed. While the *Twombly* plaintiffs' allegations regarding parallel conduct were non-conclusory, they failed to support a plausible claim. *Id.* at 566, 127 S.Ct. 1955. Because parallel conduct was said to be ordinarily expected to arise without a prohibited agreement, an allegation of parallel conduct was insufficient to support the inference that a prohibited agreement existed. *Id.* Absent such an agreement, plaintiffs were not entitled to relief. *Id.*

In contrast, *Twombly* held that the model pleading for negligence demonstrated the type of pleading that satisfies Rule 8. *Id.* at 565 n. 10, 127 S.Ct. 1955. This form provides "On June 1, 1936, in a public highway called Boylston Street in Boston, Massachusetts, defendant negligently drove a motor vehicle against plaintiff who was then crossing said highway." Form 9, Complaint for Negligence, Forms App., Fed. Rules Civ. Proc., 28 U.S.C.App., p. 829. These allegations adequately " 'state[ ] . . . circumstances, occurrences, and events in support of the claim presented.' " *Twombly,* 550 U.S. at 555 n. 3, 127 S.Ct. 1955 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1202, at 94, 95 (3d ed.2004)). The factual allegations that defendant drove at a certain time and hit plaintiff render plausible the conclusion that defendant drove negligently.

### 2. Dismissal of Claims Governed by Fed.R.Civ.P. 9(b)

A Rule 12(b)(6) motion to dismiss may also challenge a complaint's compliance with Fed.R.Civ.P. 9(b). See *Vess,* 317 F.3d at 1107. This rule provides that "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." These circumstances include the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP,* 476 F.3d 756, 764 (9th Cir.2007) (quoting *Edwards v. Marin Park, Inc.,* 356 F.3d 1058, 1066 (9th Cir. 2004)). "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme.' " *Id.* at 765 (quoting *Moore v. Kayport Package Express,* 885 F.2d 531, 541 (9th Cir.1989)). Claims subject to Rule 9(b) must also satisfy the ordinary requirements of Rule 8.

### B. Standard for a Fed.R.Civ.P. 12(e) Motion for More Definite Statement

"If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Fed.R.Civ.P. 12(e). "The situations in which a Rule 12(e) motion is appropriate are very limited." 5A Wright and Miller, Federal Practice and Procedure § 1377 (1990). Furthermore, absent special circumstances, a Rule 12(e)

motion cannot be used to require the pleader to set forth "the statutory or constitutional basis for his claim, only the facts underlying it." *McCalden v. California Library Ass'n*, 955 F.2d 1214, 1223 (9th Cir.1990). However, "even though a complaint is not defective for failure to designate the statute or other provision of law violated, the judge may in his discretion ... require such detail as may be appropriate in the particular case." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir.1996).

## C. Standard for a Fed.R.Civ.P. 12(f) Motion to Strike

Rule 12(f) authorizes the court to order stricken from any pleading "any redundant, immaterial, impertinent, or scandalous matter." A party may bring on a motion to strike within 20 days after the filing of the pleading under attack. The court, however, may make appropriate orders to strike under the rule at any time on its own initiative. Thus, the court may consider and grant an untimely motion to strike where it seems proper to do so. *See* 5A Wright and Miller, *Federal Practice and Procedure: Civil 2d* § 1380.

Motions to strike are generally viewed with disfavor, and will usually be denied unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties. See 5A C. Wright & A. Miller, Federal Practice and Procedure: Civil 2d 1380; See also *Hanna v. Lane*, 610 F.Supp. 32, 34 (N.D.Ill.1985). If the court is in doubt as to whether the challenged matter may raise an issue of fact or law, the motion to strike should be denied, leaving an assessment of the sufficiency of the allegations for adjudication on the merits. See 5A Wright & Miller, supra, at § 1380.

## III. ANALYSIS

The present motions concern all five claims against CHL: (1) violation of the Rosenthal Fair Debt Collection Procedures Act ("Rosenthal Act"), (2) negligence, (3) violation of the Real Estate Settlement Procedures Act ("RESPA"), (4) fraud, and (5) violation of the Unfair Competition Law ("UCL"); all three claims against MERS: (1) negligence, (2) fraud, and (3) violation of the UCL; one of three claims against Delta: (1) negligence; and three of the five claims against Pelletier and Olson: (1) negligence, (2) breach of contract, and (3) breach of the covenant of good faith and fair dealing.

## A. Rosenthal Fair Debt Collection Practices Act

■ California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act") prohibits creditors and debt collectors from, among other acts, making false, deceptive, or misleading representations in an effort to collect a debt. Cal. Civ.Code § 1788, et seq. A "debt collector" is "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ.Code § 1788.2(c); *see also Izenberg v. ETS Services, LLC*, 589 F.Supp.2d 1193, 1199 (C.D.Cal.2008). Plaintiff's allegations that defendant CHL violated the Rosenthal Act are the following:

1. CHL threatened to collect a debt not owed to it. FAC ¶ 68. The court assumes the debt was not owed to CHL because of the allegations of illegality in the origination of plaintiff's loan.

2. CHL made false reports to credit reporting agencies. *Id.*

3. CHL wrongly increased the amount of plaintiff's debt by including

amounts not permitted by law or contract. *Id.*

4. CHL falsely stated the amount of plaintiff's debt. *Id.*

5. CHL used unfair and unconscionable means to collect the debt from plaintiff. *Id.*

Allegation number one is not relevant to a claim under the Rosenthal Act because it fails to describe false, deceptive, or misleading representations. Specifically, allegations of illegality in the origination of a loan do not constitute representations in the collection of a debt. Allegation number five is conclusory, in that plaintiff does not specify what the alleged unfair or unconscionable means were. Accordingly, the court cannot consider this allegation when evaluating whether plaintiff stated a claim under the Act. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

The court will separately address the remaining allegations because each presents a separate theory of liability. Plaintiff's second allegation is that CHL threatened to make false reports to credit agencies. FAC ¶ 68. The Rosenthal Act does not explicitly proscribe such behavior, but does, however, explicitly incorporate federal law, Cal. Civ.Code § 1788.17, and the federal Fair Debt Collection and Practices Act prohibits "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false" 15 U.S.C § 1692e(8). Plaintiff's allegation satisfies the requirement of Rule 8 by identifying the circumstances and events of the challenged conduct. Moreover, the allegation need not meet Rule 9(b)'s heightened pleading standard. 9(b) does not apply because this theory does not "sound[ ] in fraud." *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125–26 (9th Cir. 2009). Plaintiff alleges that false representation was threatened, not necessarily made and relied upon, hence fraud is not the "basis of [the] claim," and Fed. R.Civ.P. 9(b) does not apply. *Vess,* 317 F.3d at 1103–04.

■ Plaintiff's third allegation is that CHL wrongfully increased the amount of debt by including amounts not permitted by law. FAC ¶ 68. Section 1788.13(e) prohibits adding fees that may not be lawfully added. This claim provides the minimal particularity required by Rule 8.

■ Finally, CHL allegedly "threatened" to falsely state the amount of Plaintiff's debt. FAC ¶ 68. Apart from threats made to credit agencies, discussed above, plaintiff apparently means that CHL falsely stated the debt to him. This allegation concerns particular false representations, thus sounds in fraud and is subject to Rule 9(b)'s heightened requirements. Although Plaintiff has alleged the content of the false representation and the identity of the parties (CHL), he has not alleged the time, place or manner of the misrepresentation with sufficient particularity. Accordingly plaintiff has not met the pleading requirements for his claim that CHL falsely stated the amount of debt.

Some, but not all, of plaintiff's theories of liability under the Rosenthal Act are sufficiently alleged. Defendant's motion is granted in part and denied in part as to Plaintiff's Rosenthal Act claim.

## B. Negligence

■ Plaintiff brings a claim for negligence against all moving defendants. Under California law, a claim of negligence requires "(a) a legal duty to use due care; (b) a breach of such legal duty; and (c) the breach as the proximate or legal cause of the resulting injury." *Ladd v. County of San Mateo,* 12 Cal.4th 913, 917, 50 Cal. Rptr.2d 309, 911 P.2d 496 (1996) (internal

citations and quotations omitted); *see also* Cal Civ.Code § 1714(a). The court discusses the allegations of negligence as to each defendant separately.

### 1. CHL

#### a. Lenders Duty of Care to Borrowers

Plaintiff argues that he is owed a duty by CHL "to perform acts in such a manner as to not cause Plaintiff harm." FAC ¶ 75. CHL argues that, as a lender, it did not owe the Plaintiff a duty of care. The court rejects defendant's argument that a lender never owes a duty of care to a borrower. California courts have stated that "as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Savings & Loan Assn.,* 231 Cal.App.3d 1089, 1096, 283 Cal. Rptr. 53 (1991). Applying this rule, the court in *Nymark* granted summary judgment to the defendant on a claim that the defendant lender had acted negligently in appraising the borrower's collateral to determine if it is adequate security for a loan refinancing the borrower's mortgage, as the court concluded as a matter of law that no duty of care existed with respected to the appraisal. *Id.* at 1096, 283 Cal.Rptr. 53. *See also Wagner v. Benson,* 101 Cal. App.3d 27, 36, 161 Cal.Rptr. 516 (1980) (a lender has no duty to ensure that a borrower will use borrowed money wisely).

■ The court understands *Nymark* to be limited in two ways. First, a lender may owe a duty of care sounding in negligence to a borrower when the lender's activities exceed those of a conventional lender. The *Nymark* court noted that the "complaint does not allege nor does any-thing in the summary judgment papers indicate, that the appraisal was intended to induce plaintiff to enter into the loan transaction or to assure him that his collateral was sound." *Id.* at 1096–97, 283 Cal. Rptr. 53. *Nymark* thereby implied that had such intent been present, the lender may have had a duty to exercise due care in preparing the appraisal. See also *Wagner v. Benson,* 101 Cal.App.3d 27, 35, 161 Cal.Rptr. 516 (1980) ("Liability to a borrower for negligence arises only when the lender actively participates in the financed enterprise beyond the domain of the usual money lender.").

■ Second, even when a lender's acts are confined to their traditional scope, *Nymark* announced only a "general" rule. Rather than conclude that no duty existed per se, the *Nymark* court determined whether a duty existed on the facts of that case by applying the six-factor test established by the California Supreme Court in *Biakanja v. Irving,* 49 Cal.2d 647, 320 P.2d 16 (1958). *Nymark,* 231 Cal.App.3d at 1098, 283 Cal.Rptr. 53; *see also Glenn K. Jackson Inc. v. Roe,* 273 F.3d 1192, 1197 (9th Cir.2001). This test balances six non-exhaustive factors:

> [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.

*Roe,* 273 F.3d at 1197 (quoting *Biakanja,* 49 Cal.2d at 650, 320 P.2d 16) (modification in *Roe*). Although *Biakanja* reasoned that this test determines "whether in a specific case the defendant will be held

liable to a third person not in privity" with the defendant, 49 Cal.2d at 650, 320 P.2d 16, *Nymark* held that this test also determines "whether a financial institution owes a duty of care to a borrower-client" 231 Cal.App.3d at 1098, 283 Cal.Rptr. 53. Applying these factors to the specific factors in that case, the *Nymark* court assumed that plaintiff suffered an injury, but held that the remaining factors all indicated against finding a duty of care. *Id.* at 1098–1100, 283 Cal.Rptr. 53.

In *Roe,* the Ninth Circuit noted that the California Supreme Court arguably limited *Biakanja* in *Bily v. Arthur Young & Co.,* 3 Cal.4th 370, 11 Cal.Rptr.2d 51, 834 P.2d 745 (1992), which held that a court must consider three additional factors before imposing a duty of care. *Roe,* 273 F.3d at 1198. Roe summarized these factors as "(1) liability may in particular cases be out of proportion to fault (2) parties should be encouraged to rely on their own ability to protect themselves through their own prudence, diligence and contracting power; and (3) the potential adverse impact on the class of defendants upon whom the duty is imposed." *Id.* (citing *Bily,* 3 Cal.4th at 399–405, 11 Cal.Rptr.2d 51, 834 P.2d 745). *Bily* was decided before *Nymark,* but not discussed therein.

### b. Lender's Allegedly Negligent Acts

Both limitations to the *Nymark* rule require the court to consider the particular conduct underlying the negligence claim.[2] Plaintiff alleges five types of conduct on the part of CHL and MERS.

First, plaintiff alleges that CHL was negligent in failing to maintain the original promissory note, or to properly create original documents. FAC ¶ 75. Other than the allegations regarding disclosures, plaintiff has not identified any defect in the promissory note, deed of trust, or attached documents. As to preservation of the original promissory note, plaintiff has not alleged facts supporting the conclusion that any failure to maintain this note caused any harm to plaintiff.

 Plaintiff further argues that CHL failed to make required disclosures. FAC ¶ 75. The only required disclosure relevant to this claim is CHL's alleged violation of RESPA. Plaintiff has alleged a plausible failure to make a required disclosure. CHL had a duty of care with regard to RESPA disclosures. Although these disclosures fall within the scope of the lender's normal activities, each of the *Biakanja* factors support finding a duty of care, and the policy concerns identified in *Bily* are inapplicable here. Plaintiff has adequately alleged a duty to make RESPA disclosures, a breach of that duty, and damages.

Plaintiff further alleges that CHL breached its duty of care when it took payments and charged fees to which it was not entitled, and authorized negative reporting regarding plaintiff's creditworthiness. FAC ¶ 76. Defendant's duty as to these allegations is limited by the terms of plaintiff's loan. Until the terms of plaintiff's loan are deemed void, CHL's actions to enforce those terms cannot violate any duty. As such, plaintiff has not alleged a claim for negligence with respect to the collection of payments, charging of fees, or reporting to credit bureaus. For the fore-

---

**2.** Although the court engages in this fact specific analysis, the court is mindful of fact that plaintiff has not provided a single example of a case in which a lender was found to owe a duty of care sounding in negligence to a borrower, nor has the court discovered any such authority under California law.

going reasons, defendant's motion to dismiss plaintiff's negligence claim against it is granted in part and denied in part.

## 2. MERS

 With the possible exception of failure to maintain the original promissory note, plaintiff's negligence claim does not allege any conduct plaintiff attributes to MERS. FAC ¶¶ 75, 76. This court recently considered whether the original promissory note need be maintained by MERS or any other entity seeking non-judicial foreclosure in California. *Champlaie v. BAC Home Loans Servicing, LP,* 2009 WL 3429622 at *13 (E.D.Cal. October 22, 2009). Essentially, this court concluded that "California Civil Code sections 2924–2924*l* establish an exhaustive set of requirements for non-judicial foreclosure, and that production of the note is not one of these requirements." *Id.* Thus, plaintiff has not alleged that the failure to maintain the promissory note caused him any cognizable harm. Thus, MERS's motion to dismiss plaintiff's negligence claim is granted.

## 3. Delta, Pelletier and Olson

### a. Statute of Limitations

 Plaintiff alleges that Defendants Delta, Pelletier and Olson owed him a duty "to perform acts as brokers of loans in such a manner as to not cause Plaintiff harm" FAC ¶ 72. This duty was allegedly breached when the defendants directed plaintiff into a loan that plaintiff was not qualified to receive based on his income and would not have qualified for by industry standards, thereby resulting in excessive fees beyond the Plaintiff's ability to pay. FAC ¶¶ 73–74.

 Defendants argue that the negligence claim should be dismissed because it was not timely filed. Under California law negligence claims have a two year statute of limitations. Cal. Civ. Proc. § 335.1. However, the statute of limitations begins running not when the allegedly negligent act or omission occurred, but rather "when the cause of action is complete with all of its elements." *Norgart v. Upjohn Co.,* 21 Cal.4th 383, 389, 87 Cal.Rptr.2d 453, 981 P.2d 79 (1999). Thus, with respect to negligence claims, the statute of limitations does not run until the plaintiff sustains an injury because "the mere breach of a ... duty does not suffice to create a cause of action for negligence." *Sahadi v. Scheaffer,* 155 Cal.App.4th 704, 715, 66 Cal. Rptr.3d 517 (Cal.Ct.App.2007) (citing *Budd v. Nixen,* 6 Cal.3d 195, 200, 98 Cal.Rptr. 849, 491 P.2d 433 (1971).) Accordingly, the two year statute of limitations begins to run after both (1) all of the elements of the negligence claim are complete and (2) plaintiff knew or should have known of the claim. *Norgart,* 21 Cal.4th at 397, 87 Cal. Rptr.2d 453, 981 P.2d 79.

Here, plaintiff's allegations support a claim that he did not experience any injury, or know of his claim, until his loan payments exceeded his ability to pay. Though not pled with great specificity in the FAC, the court infers from ¶ 26 that plaintiff alleges he was unaware of the nature of the mortgage, or the occurrence of an injury based on the mortgage, until his adjustable rate loan increased from the initial monthly rate of $1,274.39. The mortgage payment adjusted based on a 12 month average of monthly average yields. *Id.* Plaintiff's cause of action for negligence was not complete until November of 2007. Accordingly, his claim falls within the limitations period and the defendant's motion to dismiss is denied.

## C. Real Estate Settlement Procedures Act

 A QWR is a written request, from the borrower to the lender, for either in-

formation relating to a federally regulated mortgage loan, or an explanation of why the borrower believes the account is in error. 12 U.S.C. § 2605(e)(1)(B)(ii). RESPA requires that lenders respond to borrower's QWRs. 12 U.S.C. § 2605(e)(2). Plaintiff argues that CHL violated RESPA by failing to provide a proper written response to plaintiff's QWR which was mailed to CHL on or about May 8, 2009. FAC ¶¶ 33, 83. Defendant CHL characterizes the letter as a demand for recision that misses the definition of a QWR under 12 U.S.C. § 2605(e)(1)(B)(ii). However, based on plaintiff's FAC, the letter in question was a QWR that included a separate demand for recision under TILA. FAC ¶ 33. Accordingly, plaintiff has plead sufficient facts to support a claim for a violation of RESPA.[3]

■■■ RESPA also requires a loan servicer to "notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person." 12 U.S.C. § 2605(b)(1). Plaintiff is uncertain which defendant serviced the loan at any time, and accordingly ascribes a failure to properly advise plaintiff regarding the roles of the various entities involved in the loan to all defendants, including CHL. FAC ¶ 81. Though it is not immediately clear from plaintiff's FAC, plaintiff seems to contend that CHL had a duty to notify the plaintiff when it acquired servicing rights to his loan, and failed to do so. This

claim is pled with sufficient particularity to satisfy Rule 8. Accordingly, Plaintiff has properly stated against CHL under RESPA.

## D. Fraud

■■■ Plaintiff brings a claim for fraud against CHL and MERS. Claims for fraud are subject to a heightened pleading requirement under Fed.R.Civ.P. 9(b), as discussed above. Under California law, the elements of fraud are (1) misrepresentation (a false representation, concealment or nondisclosure), (2) knowledge of falsity, (3) intent to defraud (to induce reliance), (4) justifiable reliance and (5) resulting damages. *Agosta v. Astor*, 120 Cal. App.4th 596, 603, 15 Cal.Rptr.3d 565 (2004).

The plaintiff alleges that CHL's and MERS's involvement in the loan at issue was material to the transaction, and that both committed fraud when they failed to inform the Plaintiff of their involvement. FAC ¶ 100. Plaintiff further alleges that CHL misrepresented to Plaintiff that "CHL had the right to collect monies from Plaintiff on its behalf or on behalf of others" FAC ¶ 101. According to plaintiff, MERS "misrepresented to Plaintiff on the deed of Trust that it is a qualified beneficiary with the ability to assign or transfer the Deed of Trust and/or the Note ad/or substitute trustee under the Deed of

---

**3.** Defendant CHL, in its Reply in Support of Motion to Dismiss abandons their argument that plaintiff's letter was not a QWR, and instead claims that they provided a statutorily appropriate response when Bank of America sent plaintiff a letter dated July 17, 2009. Defendants attached this letter in a second request for judicial notice filed with their reply. RJN 2 Exhibit A. However, this letter cannot be considered in this motion because it was only presented in the defendant's reply.

Plaintiff had no opportunity to argue that the QWR is not a proper response under 12 U.S.C. § 2605(e)(2), or to challenge its authenticity under *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994) (courts may consider on a motion to dismiss "documents whose comments are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading").

Trust" and misrepresented that "it followed the applicable legal requirements to transfer the note and Deed of Trust to subsequent beneficiaries" FAC ¶ 102.

Plaintiff alleges the specific content of the false representation, and the parties involved. These allegations, however, fail to meet the pleading standard required by Fed.R.Civ.P. 9(b) in that they do not identify the time or place of the alleged representations.

Regarding the claim that MERS misrepresented its status on the deed of trust, plaintiff has not pled a necessary element of fraud: misrepresentation. The complaint contains no allegations that would render plausible the argument that, notwithstanding the fact that MERS is listed as a beneficiary on the deed of trust and that no assignment has been made, MERS is not the beneficiary.

Further, plaintiff argues in his opposition that moving defendants are somehow vicariously liable for the alleged misrepresentations made by real estate broker defendants Delora, Pelletier, and Olson. Plaintiff, however, fails to provide any legal theory to support such liability based upon the facts alleged in his complaint. As such, plaintiff has not stated a claim for vicarious liability of any defendants. Plaintiff's allegations fail to meet the specificity required by Rule 9(b).

### E. Breach of Contract

■■■■ Plaintiffs brings a claim for breach of contract against Pelletier and Olson to which defendants move to dismiss. A cause of action for breach of contract requires: (1) that a contract exists between the parties, (2) that the plaintiff performed his contractual duties or was excused from nonperformance, (3) that

the defendant breached those contractual duties, and (4) that plaintiff's damages were a result from the breach. *Reichert v. General Ins. Co.,* 68 Cal.2d 822, 830, 69 Cal.Rptr. 321, 442 P.2d 377 (1968); *First Commercial Mortgage Co. v. Reece,* 89 Cal. App.4th 731, 745, 108 Cal.Rptr.2d 23 (2001).

Plaintiff alleges that he entered into "an agreement with with Defendants ... whereby Defendants promised to provide Plaintiff with an affordable loan", and to refinance the loan if it became unaffordable. FAC ¶ 117, 119. Inasmuch as these allegations transcend the promissory note, the court treats them as a claim for an oral contract. Defendants argue that plaintiff's breach of contract claim is time barred.

■■■■ The statute of limitations for a breach of oral contract is two years. Cal. Code Civ. Proc. § 339. The statute of limitations begins to run on oral contracts when the contract is breached, not when the contract is formed. *Church v. Jamison,* 143 Cal.App.4th 1568, 1582–1583, 50 Cal.Rptr.3d 166 (2006); *see also Parker v. Walker,* 5 Cal.App.4th 1173, 1189, 6 Cal. Rptr.2d 908 (1992). When a breach of contract occurs in secret, and is not reasonably discoverable until a later time, the discovery date sets the beginning of the limitations period. *Gryczman v. 4550 Pico Partners, Ltd.,* 107 Cal.App.4th 1, 4–5, 131 Cal.Rptr.2d 680 (Cal.App. 2 Dist., 2003).

Here, plaintiff alleges a variety of breaches, including failure to secure the promised payments and interests rates, and failure to refinance the mortgage as promised. FAC ¶ 119. Contrary to defendant's assertions, the breaches alleged by plaintiff, such as the failure to refinance, occurred at least one year after the closing of the loan on November 24, 2006,

or were not discoverable until the loan adjusted in November of 2007. Hence, the court finds that the limitations period for this action began in November of 2007, and plaintiff's breach of contract claim is timely.

### F. UCL

 Plaintiff brings a cause of action against all defendants, and defendants MERS and CHL move to dismiss. California's Unfair Competition Law, Cal. Bus. & Prof.Code § 17200, ("UCL") proscribes "unlawful, unfair or fraudulent" business acts and practices. Plaintiff's allegations incorporate, by reference, the entire FAC, but the sole allegation explicitly specifying a UCL violation is that "[p]laintiff is informed and believes, that Defendant's acts, as alleged herein, constitute unlawful, unfair, and/or fraudulent business practices, as defined in the California Business and Professions Code § 17200 et. seq." FAC ¶ 112. Plaintiff's allegation sketches only the barest outline of an UCL claim and directs defendants to scour the remainder of the complaint to determine, which, if any, allegations incorporated by reference plaintiff intend as the basis for this claim.

The incorporated allegations fail to state a UCL claim based on fraudulent or unfair business practices. As to fraud, Fed. R.Civ.P. 9(b) applies to UCL claims sounding in fraud, and plaintiff has failed to meet the standard. As to unfair business practices plaintiff fails to provide defendants with any notice as to which acts, if any, defendants are alleged to have done which constitute such practices.

Plaintiff's UCL claim must proceed, if at all, on the theory that defendants acted unlawfully. As discussed above, plaintiff has adequately alleged unlawful acts in that CHL may have violated RESPA and the Rosenthal Act and negligently failed to make disclosures under RESPA. These allegations identify predicate acts supporting a UCL claim. However, plaintiff has not adequately alleged any claims of unlawful activity against MERS, including negligence or fraud. Thus, CHL's and MERS's motion to dismiss plaintiff's UCL claim is granted as to defendant MERS and is denied as to defendant CHL insofar as plaintiff's claims derive from the theories described above.

### G. Breach of the Implied Covenant of Good Faith and Fair Dealing.

 Plaintiff brings a claim for breach of the implied covenant of good faith and fair dealing against Pelletier and Olson, who move to dismiss. Such a claim is predicated upon the existence of a contract. A claim for the breach of the duty of good faith is a claim that a defendant deprived plaintiff of benefits reasonably excepted by the parties under the contract; entry into a contract itself cannot constitute a violation of the duty of good faith.

Plaintiff does not indicate in his FAC whether the contract at issue was the promissory note, the alleged oral contract whereby Defendants promised to refinance the loan, or both. Plaintiff alleges that defendants breached the duty of good faith and fair dealing by "[f]ailing to pay at least as much regard to Plaintiffs' interests as to Defendants' interests," "[f]ailing to disclose ... the true nature of the loan that is the subject of this action," "[f]ailing to give Plaintiffs' the requisite notice and disclosures," and "failing to comply with all applicable laws." FAC ¶¶ 124–125.

 Defendants argue that this claim should be dismissed as untimely. A

claim for the covenant of good faith and fair dealing has a two year statute of limitations when it sounds in tort, and four years if it sounds in contract. *Love v. Fire Insurance Exchange,* 221 Cal.App.3d 1136, 1144, 271 Cal.Rptr. 246 (1990). A good faith claim sounds in tort only when there is a "special relationship" between the contracting parties. *See, e.g., Jonathan Neil & Assoc. v. Jones,* 33 Cal.4th 917, 932, 16 Cal.Rptr.3d 849, 94 P.3d 1055 (2004).

■ Here, plaintiff does not identify whether his good faith and fair dealing claim sounds in tort or contract. While plaintiff makes some allegation which would suggest the claim sounds in tort, e.g., suggesting a special relationship plaintiff and defendant, such an argument is not supported by California law. Specially, California courts have held that at least as between lenders and commercial borrowers, there is ordinarily not a special relationship giving rise to tortious bad faith liability. *Kim v. Sumitomo Bank,* 17 Cal.App.4th 974, 979, 21 Cal.Rptr.2d 834 (1993) (citing *Careau & Co. v. Security Pacific Business Credit, Inc.,* 222 Cal. App.3d 1371, 1399, n. 25, 272 Cal.Rptr. 387 (1990)).

Nonetheless, plaintiff may state a claim for a breach of the implied covenant of good faith and fair dealing sounding in contract. Because defendants have only moved to dismiss on statute of limitation grounds, the court does not consider whether plaintiff has stated a claim for a breach of good faith and fair dealing sounding in contract. Rather, the court acknowledges that plaintiff has made allegations that do not depend on a special relationship, and therefore sound in contract. These claims clearly meet the 4 year statute of limitations requirement. Accordingly, defendant's motion to dismiss

plaintiff's breach of the covenant of good faith and fair dealing claim is granted in so far as the claim sounds in tort, and denied insofar as the claim sounds in contract.

**H. Motion for a More Definite Statement**

Because the court grants plaintiff leave to amend his complaint, defendants motion for a more definite statement is denied.

**I. Motion to Strike**

Defendant MERS argues that plaintiff's allegations that MERS was not registered to do business in California should be stricken from the plaintiff's FAC. Defendants contends that plaintiff's allegations stem solely from a typographical error. The court is not persuaded, and the motion to strike is denied.

■ As to plaintiff's request for attorney fees, defendant argues that the fees are not recoverable as a matter of law, and should be stricken. At this point, the only fees that the court is prepared to say are not recoverable as a matter of law are plaintiff's specific request for attorneys fees under the UCL. FAC ¶ 115. Attorney fees are not recoverable under the UCL. *Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,* 20 Cal.4th 163, 179, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999). Accordingly, the court strikes references to attorney fees under UCL from the FAC.

As to the punitive damages, defendants argue that all of plaintiff's allegations regarding oppression, fraud, or malice are conclusory, hence plaintiff has not demonstrated he is entitled to punitive damages. Mindful of the principle that motions to strike are disfavored, and the fact that plaintiff will be granted leave to amend his

complaint, the court finds plaintiff's argument inadequate.

## IV. CONCLUSION

For the reasons stated above, the court GRANTS IN PART Defendants; motions to dismiss plaintiff's first amended complaint, Doc. Nos. 19, 21.

The court DISMISSES the following claims:

1. Third Claim, for negligence, as to defendant MERS.

2. Sixth Claim, for fraud, as to defendants MERS and CHL.

3. Seventh Claim, for violation of California's Unfair Competition Law, as to defendant MERS.

4. Ninth Claim, for violation of the implied covenant of good faith and fair dealing, as to defendants Pelletier and Olson, insofar as this claim sounds in tort.

All dismissals are without prejudice. Plaintiff is granted twenty one (21) days to file a second amended complaint. It appears that the plaintiff may truthfully amend to cure defects on some of his claims. However, plaintiff is cautioned not to re-plead insufficient claims, or to falsely plead.

The court DENIES defendants' motions as to the following claims, insofar as they are premised on the theories found adequate in the analysis above:

1. Second Claim, for violation of California's Rosenthal Act, as to defendant CHL.

2. Third Claim, for negligence, as to defendants CHL, Delta, Pelletier, and Olson.

3. Fourth Claim, for violation of RESPA, as to defendant CHL.

4. Seventh Claim, for violation of California's Unfair Competition Law, as to defendant CHL.

5. Eighth Claim, for breach of contract, as to defendants Pelletier and Olson.

6. Ninth Claim, for violation of the implied covenant of good faith and fair dealing, as to defendants Pelletier and Olson, insofar as this claim sounds in contract.

IT IS SO ORDERED.